**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **TONY V. ANDERSON and** | § | **FILED** |
| **HANNA J. ANDERSON** | § | |
| | § | **February 02, 2017** |
| **Plaintiffs,** | § | KAREN MITCHELL |
| | § | CLERK, U.S. DISTRICT COURT |
| **v.** | § | |
| | § | **CASE NO. 3:16-cv-2514** |
| **WELLS FARGO BANK, N.A. d/b/a** | § | |
| **WELLS FARGO HOME MORTGAGE,** | § | |
| **as Servicer for Ginnie Mae Mortgage** | § | |
| **Backed Security Pool 00AN661OCD;** | § | |
| | § | |
| **EXPERIAN INFORMATION** | § | |
| **SOLUTIONS, INC.;** | § | |
| | § | |
| **TRANS UNION LLC; and** | § | |
| | § | |
| **EQUIFAX INFORMATION SERVICES,** | § | |
| **LLC.** | § | |
| | § | |
| **Defendants.** | | |

## PLAINTIFFS' SECOND AMENDED PETITION

**TO THE HONORABLE JUDGE OF SAID COURT:**

COME NOW, Tony V. Anderson and Hanna J. Anderson, Plaintiffs, and file this suit against Wells Fargo N.A. d/b/a Wells Fargo Home Mortgage as Servicer for Ginnie Mae Mortgage Backed Security Pool 00AN661OCD, Experian Information Solutions, Inc., Trans Union LLC, and Equifax Information Services, LLC, Defendants, and in support hereof, would respectfully show the Court:

## I. INTRODUCTION

1. Plaintiffs are suing Defendants because they are refusing to correctly report the Plaintiffs' payment history related to Plaintiffs' home mortgage loan with Wells Fargo and Mr.

Anderson's bankruptcy correctly on their credit reports.  Despite Plaintiffs' multiple requests to all Defendants to correct their inaccurate reporting, Defendants have not yet fully resolved the issues presented in Plaintiffs' correspondence to Defendant Wells Fargo and FCRA dispute letters to Defendants Experian Information Solutions, Inc., Trans Union LLC, and Equifax Information Services, LLC (collectively, the "Credit Reporting Agencies").

2.      Plaintiffs have made all mortgage payments since the inception of their home mortgage loan at issue; however, in January 2015, for no apparent reason, Wells Fargo stopped applying Plaintiffs' regular, timely mortgage payments and instead held them in an "Unapplied" status, causing Wells Fargo's accounting systems to treat the Plaintiffs' loan as if it was in default. Wells Fargo continued to hold funds as unapplied for five months, reporting payment delinquencies to the Credit Reporting Agencies during that time, as well as inaccurate information regarding the loan's relation to Mr. Anderson's bankruptcy case.  Mr. Anderson did not file his bankruptcy case because of any issue with his and Hanna Anderson's mortgage loan with Wells Fargo.[1]  Plaintiffs were current with regard to the mortgage loan when Mr. Anderson filed his Chapter 13 case, Plaintiffs were current during each month that Mr. Anderson was in his Chapter 13 case, and Plaintiffs were current when Mr. Anderson emerged with a Chapter 13 discharge from his Chapter 13 case.  Accordingly, both before Mr. Anderson filed bankruptcy and after he emerged from bankruptcy, Defendants should have reported the loan status as in good standing, open, and paid as agreed.

3.      Instead, in the months before a discharge was granted and post-discharge, Defendants have continually reported Plaintiffs' loan status in a variety of bizarre, inaccurate, and

---

[1] Mr. Anderson filed his bankruptcy case to seek discharge of debts associated with two surrendered properties in Florida, which were subsequently sold and paid in full, and Mr. Anderson paid 100% of all allowed unsecured claims through his Chapter 13 plan.  Plaintiffs have never missed a payment on the loan at issue, the loan has never been in default, and the underlying debt was not discharged.

**PLAINTIFFS' SECOND AMENDED PETITION**                                    **PAGE 2**

damaging ways on both Plaintiffs' credit reports.  The effect of Defendants' false reporting has been mentally, emotionally, and financially distressing and damaging for the Plaintiffs.  It has resulted in credit damage and has limited Plaintiffs' ability to use credit to purchase vehicles and take out small business loans to grow Mrs. Anderson's business.  Plaintiffs have been forced to devote time away from work, friends, and family to address this unnecessary problem, and now Plaintiffs have been forced to retain counsel and incur even more time, expense, and aggravation.

4.      Wells Fargo's clear disregard for its obligations under the Bankruptcy Code and applicable consumer protection statutes undermines the critical fresh start purpose of the Bankruptcy Code in a manner that is damaging to the integrity of the bankruptcy court's authority and the rule of law.

5.      Defendants' actions in reporting inaccurate information and refusing to correct the same regarding Plaintiffs' mortgage loan also undermines the purposes of the Fair Credit Reporting Act and other consumer protection statutes.

6.      Accordingly, by this suit, Plaintiffs seek to recover actual damages, including out-of-pocket costs, attorneys' fees, and mental and emotional distress damages, as well as punitive damages against Defendants in an amount sufficient to provide appropriate retribution and deterrence such that this type of conduct is effectively remedied.

## II.  PARTIES AND SERVICE

7.      Plaintiffs are individuals whose address is 9401 Shoveler Trail, Fort Worth, Texas 76118.

8.      Plaintiff Tony V. Anderson was the debtor in *In re Tony V. Anderson*, Case Number 14-00952-PMG, filed in the United States Bankruptcy Court for the Middle District of Florida, Jacksonville Division.  Mr. Anderson is an active military service member and veteran, having

joined the United States Navy in 1999.  Mr. Anderson is currently a Lieutenant Commander serving as Officer in Charge for the Joint Reserve Intelligence Center in Fort Worth.

9.    Plaintiff Hanna J. Anderson is a Polish citizen who moved to the United States with her husband, Mr. Anderson, in March 2013.  Mrs. Anderson is a legal United States resident and is self-employed as a personal trainer.

10.    Defendant Wells Fargo Bank, N.A. ("Wells Fargo") is a national bank with its principal place of business located in San Francisco, California, which conducts its mortgage servicing duties under the name of its mortgage division, Wells Fargo Home Mortgage.  Wells Fargo may be served with process through its registered agent, Corporation Service Company dba CSC – Lawyers Incorporating Service Company, at 211 E. 7th Street, Suite 620, Austin, TX 78701-3218.

11.    Defendant Experian Information Solutions, Inc. ("Experian") is a foreign for-profit corporation and credit reporting agency with its principal place of business located in Costa Mesa, California.  Experian may be served with process through its registered agent, CT Corporation System, at 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136.

12.    Defendant Trans Union LLC ("TransUnion") is a foreign limited liability company and credit reporting agency with its principal place of business located in Chicago, Illinois.  TransUnion may be served with process through its registered agent, The Prentice-Hall Corporation System, at 211 E. 7th Street, Suite 620, Austin, TX 78701-3218.

13.    Defendant Equifax Information Services, LLC ("Equifax") is a foreign limited liability company and credit reporting agency with its principal place of business located in Atlanta, Georgia.  Equifax may be served with process through its registered agent, Corporation Service Company, at 211 E. 7th Street, Suite 620, Austin, TX 78701-3218.

### III.  JURISDICTION, AUTHORITY, AND VENUE

14.     The subject matter in controversy is within the jurisdictional limits of this court.

15.     This matter is related to *In re Tony V. Anderson*, Case Number 14-00952-PMG, filed in the United States Bankruptcy Court for the Middle District of Florida, Jacksonville Division.

16.     The Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1331 (federal question jurisdiction), 28 U.S.C. § 1334, and 11 U.S.C. § 105.  The Court also has jurisdiction over the state law claims in the action pursuant to 28 U.S.C. § 1331.

17.     This court has jurisdiction over Defendants because Defendants purposefully availed themselves of the privilege of conducting activities in the state of Texas and established minimum contacts sufficient to confer jurisdiction over said Defendants, and the assumption of jurisdiction over Defendants will not offend traditional notions of fair play and substantial justice and is consistent with the constitutional requirements of due process.

18.     Plaintiffs would show that Defendants had continuous and systematic contacts with the state of Texas sufficient to establish general jurisdiction over said Defendants.

19.     Plaintiffs would also show that the cause of action arose from or relates to the contacts of Defendants to the State of Texas, thereby conferring specific jurisdiction with respect to said Defendants.

20.     Defendant Wells Fargo services a note secured by a deed of trust concerning property located in Texas.

21.     Defendants Experian, TransUnion, and Equifax provide reporting information nationally regarding consumer credit debts and transactions, including for loans originating in Texas, for loans secured by property in Texas, and for borrowers who are residents of Texas.

22.     Venue is proper in this district pursuant to 28 U.S.C. § 1391 because the property

that is the subject of the action is situated in this district.

## IV.  FACTUAL ALLEGATIONS

23.     On or about December 27, 2012, Plaintiffs executed a fixed rate mortgage note with Blue Star Residential Lending, Inc. in the amount of $289,230.00, which was secured by a deed of trust against Plaintiffs' homestead property at 9401 Shoveler Trail, Fort Worth, Texas 76118, and guaranteed by the U.S. Department of Veterans Affairs.  Attached hereto as Exhibit 1 are true and correct copies of the Plaintiffs' note, deed of trust, and assignment of such to Wells Fargo as filed by Wells Fargo with its Proof of Claim in Mr. Anderson's bankruptcy case.

24.     Plaintiffs' mortgage loan was assigned to and acquired by Wells Fargo on March 11, 2014.  *See* Exhibit 1.

25.     Wells Fargo currently serves as Servicer for the Government National Mortgage Association, Ginnie Mae Mortgage Backed Security Pool 00AN661OCD, which owned Plaintiffs' mortgage loan at the time of Mr. Anderson's bankruptcy discharge and currently owns Plaintiffs' mortgage loan.

26.     Mr. Anderson filed for bankruptcy protection under Chapter 13 on February 28, 2014 in Case Number 14-00952-PMG, filed in the United States Bankruptcy Court for the Middle District of Florida, Jacksonville Division.

27.     Mr. Anderson filed his bankruptcy in order to discharge debt associated with two properties in Florida.  Debtor subsequently sold both Florida properties with approval of the bankruptcy court and modified his confirmed plan accordingly, allowing Mr. Anderson to pay 100% of all allowed unsecured claims and satisfy all obligations under his Chapter 13 plan in a short period of time.

28.     Plaintiffs were not behind on mortgage payments to Wells Fargo at the time Mr. Anderson filed for bankruptcy protection.  Attached hereto as Exhibits 2 and 3 are true and correct copies of Mr. Anderson's bankruptcy Schedule D, filed on February 28, 2014, and Well Fargo's Proof of Claim Number 12, without exhibits, filed on July 14, 2014, which confirms that Plaintiffs owed no pre-petition arrearage on their mortgage loan.

29.     Wells Fargo's claim was treated as "Pay Direct" in Mr. Anderson's Chapter 13 Plan.  Exhibit 4.  As no payments were to be made to Wells Fargo by the Chapter 13 Trustee, a Notice of Final Cure Payment was not filed related to Plaintiffs' loan with Wells Fargo.

30.     Plaintiffs submitted all required mortgage payments during Mr. Anderson's bankruptcy case.  Exhibit 5.

31.     Wells Fargo accepted every payment submitted by the Plaintiffs before, during, and after Mr. Anderson's Chapter 13 case.  *Id.*

32.     Plaintiffs were current on their mortgage payments to Wells Fargo at the time of Mr. Anderson's Chapter 13 discharge.  *Id.*

33.     Accordingly, both before Mr. Anderson filed bankruptcy and after he emerged from bankruptcy, Defendants should have reported Plaintiffs' loan status as in good standing, open, and paid as agreed.

34.     An order granting Mr. Anderson's discharge in bankruptcy was entered on April 8, 2015.  Exhibit 6.  Mr. Anderson's discharge order specifically states that some debts are not discharged, including those provided for under 11 U.S.C. § 1322(b)(5) and on which the last payment is due after the date on which the final payment under the plan was due.  *Id.*

35.     11 U.S.C. § 1328(a) provides for discharge of debts in Chapter 13 bankruptcy and specifically excludes those debts provided for under 11 U.S.C. § 1322(b)(5), including Plaintiffs' homestead mortgage loan account with Wells Fargo.  11 U.S.C. § 1328(a); 11 U.S.C. § 1322(b)(5).

36.     Plaintiffs were first informed of mismanagement of their mortgage loan by Wells Fargo in January of 2015, while Mr. Anderson was still in active bankruptcy.

37.     Wells Fargo sent Plaintiffs a mortgage statement, dated January 16, 2015, indicating that the regular mortgage payment received by Wells Fargo on December 31, 2014 was held as "Unapplied," rather than applied to principal, interest, and escrow as required by the underlying note and deed of trust.

38.     The January 16, 2015 mortgage statement stated, falsely, that Plaintiffs' payment due January 1, 2015 was unpaid, and demanded that Plaintiffs submit a total payment of $3,941.80 due February 1, 2015.  Exhibit 7.

39.     Following the January statement, Plaintiffs received a letter from Wells Fargo's Home Preservation Department, dated February 9, 2015, informing Plaintiffs of the availability of homeowners counseling and other information regarding the Service Members Civil Relief Act. Exhibit 8.

40.     The next mortgage statement Plaintiffs received from Wells Fargo, dated February 17, 2015, indicated that their regular mortgage payment received by Wells Fargo on January 30, 2015 was also held as "Unapplied," rather than applied to principal, interest, and escrow, stated that Plaintiffs' payments due in January and February 2015 were unpaid, and demanded that Plaintiffs submit a total payment of $5,912.70 due March 1, 2015.  Exhibit 9.

41.     The next mortgage statement Plaintiffs received from Wells Fargo, dated March 16, 2015, indicated that their regular mortgage payment received by Wells Fargo on February 29, 2015 was also held as "Unapplied," rather than applied to principal, interest, and escrow, stated that Plaintiffs' payments due for January through March 2015 were unpaid, and demanded that Plaintiffs submit a total payment of $7,883.60 due April 1, 2015.  Exhibit 10.

42.     The next mortgage statement Plaintiffs received from Wells Fargo, dated April 16, 2015, indicated that their regular mortgage payment received by Wells Fargo on March 31, 2015 was also held as "Unapplied," rather than applied to principal, interest, and escrow, stated that Plaintiffs' payments due for January through April 2015 were unpaid, and demanded that Plaintiffs submit a total payment of $9,854.50 due May 1, 2015.  Exhibit 11.

43.     On or about May 8, 2015, Wells Fargo sent Plaintiffs a default notice, demanding an amount of "-$1.50" to bring Plaintiffs' mortgage loan current.  Exhibit 12.

44.     On or about May 8, 2015, Plaintiffs contacted Wells Fargo by telephone to inquire about the alleged delinquency and obtain a loan history for the mortgage loan.

45.     The next mortgage statement Plaintiffs received from Wells Fargo, dated May 10, 2015, indicated that their regular mortgage payment received by Wells Fargo on April 30, 2015 was initially held as "Unapplied," rather than applied to principal, interest, and escrow.  Exhibit 13.  The statement also indicated that, on April 30, 2015, Wells Fargo finally applied funds from Plaintiffs' Unapplied balance to principal, interest, and escrow, representing five separate mortgage payments of $1,970.90 and a separate principal payment of $1.50.  *Id.*

46.     Plaintiffs received a letter dated May 14, 2015 from the U.S. Department of Veterans Affairs (VA) stating that Plaintiffs' mortgage company had notified VA that they had fallen behind on their home mortgage loan payments and encouraging Plaintiffs to reach out to Wells Fargo and VA for assistance with their "delinquent" loan.  Exhibit 14.

47.     In response to Plaintiffs' May 8, 2015 telephone inquiry, Wells Fargo sent Plaintiffs a letter dated May 15, 2015 containing a Customer Account Activity Statement detailing Wells Fargo's application of Plaintiffs' payments from January 2014 through May 2015.  The statement clearly demonstrated that Wells Fargo had retained five regular mortgage payments without

applying the same to principal, interest, and escrow when received as required by the note and deed of trust.  Exhibit 5.

48.     Concerned that Wells Fargo was reporting the alleged "missed" payments on their credit reports, Plaintiffs reviewed their credit reports and discovered that TransUnion, Experian, and Equifax were all reporting incorrect information regarding Plaintiffs' loan with Wells Fargo. True and correct copies of excerpts of Plaintiffs' credit reports obtained from March 2015 through June 2015 are attached hereto as Exhibit 15.  Plaintiffs incorporate by reference their explanations of the errors found in each credit report as provided in Plaintiffs' October 5, 2015 dispute letters to TransUnion, Experian, and Equifax, attached hereto as Exhibit 16, and reproduced herein at ¶53.

49.     On July 28, 2015, Plaintiffs' counsel sent a Request for Information to Wells Fargo, pursuant to Regulation X of the Mortgage Servicing Act as amended by the Consumer Financial Protection Bureau pursuant to the Dodd Frank Act, on behalf of Plaintiff.  Exhibit 17.

50.     The July 28, 2015 Request for Information requested that Wells Fargo provide all information used in determining the basis for its decision to hold the Plaintiffs' payments for January through April 2015 in unapplied funds for months before applying the same payments to principal, interest, and escrow and its decision to send Plaintiffs a delinquency letter demanding $-1.50 required to bring Plaintiffs' loan current, including all documents supporting those decisions by Wells Fargo.  *Id.*

51.     The July 28, 2015 Request for Information also requested transaction histories and information regarding the owner of Plaintiffs' loan, pursuant to 12 C. F. R. § 1024.36.  *Id.*

52.     Wells Fargo acknowledged receipt of Plaintiffs' July 28, 2015 Request for Information in a letter dated August 4, 2015, indicating an anticipated response date of August 17, 2015.  Exhibit 18.

53.     Wells Fargo sent another letter dated August 17, 2015, indicating a new anticipated response date of August 31, 2015.  Exhibit 19.

54.     Wells Fargo did not provide Plaintiffs with the identify and contact information for the owner of the mortgage loan within 10 business days, as required by 12 C.F.R. § 1024.36(d)(ii)(2)(A).

55.     On or about August 31, 2015, Wells Fargo provided its response to Plaintiffs' July 28, 2015 Request for Information.  Exhibit 20.  In its response, Wells Fargo provided identification and contact information for the owner of Plaintiffs' loan and enclosed a manufactured account history on spreadsheets (i.e. not from its system of record, as requested), the underlying note, deed of trust, and assignments, Wells Fargo's Loan Information Report, and the July 28, 2015 Request for Information to which the response was directed.  *Id.*  Wells Fargo also stated that it was unable to provide any further information because "your remaining requests are too broad," offering to re-review the request if submitted with "more specific details about what you're seeking."  *Id.*

56.     Plaintiffs first disputed Wells Fargo's incorrect reporting in letters to Experian, Equifax, and TransUnion, dated October 5, 2015.  Exhibit 16.  Plaintiffs enclosed with each letter copies of the Plaintiffs' drivers' licenses, credit report excerpts, bank statements for December 2014 through July 2015, mortgage statements for January through June 2015, the Wells Fargo Customer Account Activity Statement from loan inception through May 15, 2015, Mr. Anderson's bankruptcy Schedule D, Mr. Anderson's bankruptcy Chapter 13 Plan, and Mr. Anderson's bankruptcy Discharge Order.  *Id.*

57.     The October 5, 2015 dispute letters set forth descriptions of the errors found in Plaintiffs' credit reports and recommended corrections, which are reproduced below.  *Id.*

05/18/2015 TransUnion Report, File No. 327740445, for Tony Anderson

- Wells Fargo Mortgage Loan No. *936029560***** As Reported

- o Balance: $0; Last Payment Made: 12/01/2014; No rating for 02/2015 – 04/2015; Remarks: Chapter 13 Bankruptcy
- o *Balance should include the current principal balance, rather than $0.00, as this debt was not discharged. The last payment made for this report should be 05/01/2015. Payment history should reflect payments made for all months with no delinquencies.*

06/12/2015 TransUnion Report, File No. 327740445-014, for Tony Anderson

- Wells Fargo Mortgage Loan No. *936029560*\*\*\*\* As Reported
  - o Balance: $0; Last Payment Made: 12/01/2014; Remarks: Chapter 13 Bankruptcy; No rating for 02/2015 – 04/2015
  - o *Balance should include the current principal balance, rather than $0.00, as this debt was not discharged. The last payment made for this report should be 06/01/2015. Payment history should reflect payments made for all months with no delinquencies.*

06/12/2015 TransUnion Report, File No. 352533208, for Hanna Anderson

- Wells Fargo Mortgage Loan No. 0295608145 As Reported
  - o Payment Received: $0; Last Payment Made: 12/01/2014; Maximum Delinquency of 90 days in 04/2015 for $5,912; History shows no payment received and delinquency for Jan-May 2015.
  - o *Payment received should be $1971.00, with the last payment made on 06/01/2015. Status, balance, payment, and account histories should reflect payments made for all months with no delinquencies.*

05/18/2015 Experian Report No. 3617-7175-87, for Tony Anderson

- Wells Fargo Mortgage Loan No. *936029560*.... As Reported
  - o Recent Balance: $0 as of 05/2015; Recent Payment: $0; Monthly Payment: $0; Status: Discharged through Bankruptcy Chapter 13; Account History: 02/2015 (30 days delinquent), 03/2015 (60 days delinquent), Debt included in Chapter 13 Bankruptcy on April 08, 2015; Balance History: showing no data/no payment for Jan 2015-Apr 2015
  - o *Balance should include the current principal balance, rather than $0.00, as this debt was not discharged. Recent payment should be $1971.00, with the monthly payment reflecting the same. Balance and account histories should reflect payments made for all months with no delinquencies and should not reflect that the debt was discharged through Chapter 13 bankruptcy.*

06/12/2015 Experian Report No. 3619-2947-47, for Tony Anderson

- Wells Fargo Mortgage Loan No. *936029560*.... As Reported

- o Recent Balance: $0 as of 06/2015; Recent Payment: $0; Monthly Payment: Not reported; Status: Discharged through Bankruptcy Chapter 13; Account History: Debt included in Chapter 13 Bankruptcy on April 08, 2015; Payment History: showing no data/no payment for Jan 2015-Apr 2015, 02/2015 (30 days delinquent), 03/2015 (60 days delinquent)
- o *Balance should include the current principal balance, rather than $0.00, as this debt was not discharged. Recent payment should be $1971.00, with the monthly payment reflecting the same. Balance and account histories should reflect payments made for all months with no delinquencies and should not reflect that the debt was discharged through Chapter 13 bankruptcy.*

03/26/2015 Experian Report No. 1198-1368-69, for Hanna Anderson

- Wells Fargo Mortgage Loan No. *936029560*.... As Reported
  - o Recent Payment: $0; Status: Open. $3,941 past due as of Mar 2015; Payment & Account History: 02/2015 (30 days past due), 03/2015 (60 days past due); Balance History: showing no data/no payment for Jan 2015-Feb 2015
  - o *Recent payment should be $1971.00. Status, balance, payment, and account histories should reflect payments made for all months with no delinquencies.*

05/17/2015 Experian Credit Tracker Report (Report No. Unknown), for Hanna Anderson

- Wells Fargo Mortgage Loan No. *936029560xxxx* As Reported
  - o Payment Status: Current, was past due 90 days; Payment & Account History: 02/2015 (30 days past due), 03/2015 (60 days past due)
  - o *Status, balance, payment, and account histories should reflect payments made for all months with no delinquencies.*

06/12/2015 Experian Report No. 1069-1579-58, for Hanna Anderson

- Wells Fargo Mortgage Loan No. *936029560*.... As Reported
  - o Recent Payment: $11,945; Monthly Payment: $2,088; Payment History: showing no data/no payment for Jan 2015-May 2015, 02/2015 (30 days delinquent), 03/2015 (60 days delinquent), 04/2015 (90 days delinquent)
  - o *Recent payment should be $1971.00. Status, balance, payment, and account histories should reflect payments made for all months with no delinquencies.*

06/12/2015 [sic] Equifax Report, Confirmation No. 5167045686, for Tony Anderson

- Wells Fargo Mortgage Loan No. *936029560\** As Reported
  - Balance Amount: $0; Date of Last Payment: 12/01/2014; Date of 1st Delinquency: 02/2015; Date of 1st Delinquency Reported: 03/2015; Status: Included in Wage-earner Plan, Bankruptcy Chapter 13, Bankruptcy completed; showing no payment for 01/2015 – 04/2015, no data for 05/2015
  - *Balance should include the current principal balance, rather than $0.00, as this debt was not discharged.  The last payment made for this report should be 06/01/2015.  Balance and account histories should reflect payments made for all months with no delinquencies and should not reflect that the debt was included in a wage-earner plan or that the debt was discharged through Chapter 13 bankruptcy.*

*Id.*  As of June 12, 2015, Equifax could not identify a credit account for Plaintiff Hanna Anderson.

58.    The Plaintiffs provided Wells Fargo with true and correct copies of all six October 5, 2015 dispute letters to the Credit Reporting Agencies and their attachments.  *See* Exhibit 16.

59.    Wells Fargo received copies of all six October 5, 2015 dispute letters to the Credit Reporting Agencies and their attachments on October 9, 2015.  Exhibit 21.

60.    In a letter dated October 12, 2015, Wells Fargo acknowledged receipt of Plaintiffs' October 5, 2015 credit dispute letters and indicated that Wells Fargo expected to complete research and respond to by October 23, 2015.  Exhibit 22.

61.    On October 13, 2015, Wells Fargo representative Cindy Morris called Plaintiffs' counsel to acknowledge receipt of Plaintiffs' October 5, 2015 credit dispute letters.

62.    On October 14, 2015, Equifax sent a letter to Plaintiffs acknowledging receipt of the October 5, 2015 dispute letter, indicating that a file could not be located for Plaintiff Hanna Anderson, and requesting additional information.  Exhibit 23.

63.    On October 14, 2015, TransUnion sent an acknowledgment letter to Plaintiffs indicating receipt of the October 5, 2015 dispute letter for Hanna Anderson.  Exhibit 24.

64.    On October 15, 2015, TransUnion sent an acknowledgment letter to Plaintiffs indicating receipt of the October 5, 2015 dispute letter for Tony Anderson.  Exhibit 25.

65.     On October 15, 2015, TransUnion sent a letter to Plaintiffs indicating deletion of the applicable trade line in response to the October 5, 2015 dispute letter for Tony Anderson. Exhibit 26.

66.     On October 16, 2015, Experian faxed an acknowledgment letter to Plaintiffs indicating receipt of the October 5, 2015 dispute letter for Tony Anderson.  Exhibit 27.

67.     On October 16, 2015, Experian sent letters to both Plaintiffs indicating that Experian was unable to use the information provided in the October 5, 2015 dispute letters to make changes or deletions requested, and that Experian would be reaching out to the furnisher of the information.  Exhibit 28.  Experian indicated a 30-45 day time frame for dispute resolution.  *Id.*

68.     On October 19, 2015, Experian faxed an acknowledgment letter to Plaintiffs indicating receipt of the October 5, 2015 dispute letter for Hanna Anderson.  Exhibit 29.

69.     Also on October 19, 2015, Experian sent to Plaintiffs a dispute resolution letter regarding Hanna Anderson's account and indicating an update to the Wells Fargo Home Mortgage trade line.  Exhibit 30.  The updated trade line reported the following:

10/16/2015 Experian Report No. 3224-0074-6, for Hanna Anderson

- Wells Fargo Mortgage Loan No. *936029560*.... As Reported
  - Recent Balance: $272,824 as of Oct. 2015; Recent Payment: $2,020; Monthly Payment: $2,016; Payment History: showing no data/no payment for Jan 2015-May 2015, 02/2015 (30 days delinquent), 03/2015 (60 days delinquent), 04/2015 (90 days delinquent), and a payment of $11,945 for June 2015.  Status: Open. By Nov. 2021, this account is scheduled to go to a positive status.  Comment: Completed investigation of FCRA dispute – consumer disagrees.  This item was updated from our processing of your dispute in Oct 2015.

*Id.*

70.     On October 22, 2015, TransUnion sent a letter to Plaintiffs indicating updates to the Wells Fargo Home Mortgage trade line in Hanna Anderson's credit report.  Exhibit 31.  The updated trade line reported the following:

<u>10/22/2015 TransUnion File No. 352533208, for Hanna Anderson</u>

- Wells Fargo Mortgage Loan No. *936029560*.... As Reported
  - Recent Balance: $272,820 as of 10/07/2015; Payment Received: $2,020 on 10/01/2015; Monthly Payment: $2,016; Pay Status: Current; Paid or Paying as Agreed.  Maximum delinquency of 90 days in 04/2015.  Payment history shows 02/2015 (30 days delinquent), 03/2015 (60 days delinquent), 04/2015 (90 days delinquent). Remarks: DISP INVG COMP-CONSUM DISAGRS

*Id.*

71.     Wells Fargo did not respond to Plaintiffs' October 5, 2015 credit dispute letters or request an extension of its response date by October 23, 2015, as indicated in Wells Fargo's October 12, 2015 acknowledgment letter.

72.     In a letter dated November 6, 2015, Wells Fargo, through its representative Cindy Morris, indicated that an extension to November 23, 2015 was needed to address Plaintiffs' October 5, 2015 inquiry (via credit dispute letters) regarding the incorrect credit reporting.  <u>Exhibit 32</u>.

73.     Also on November 6, 2015, Wells Fargo sent a letter to Plaintiffs' counsel to confirm representation, which was returned to Wells Fargo with the requested information that same day.  <u>Exhibit 33</u>.

74.     On November 20, 2015, Plaintiffs sent copies of Hanna Anderson's driver's license and social security card to Equifax in response to its October 14, 2015 request for additional information, which was received by Equifax on November 23, 2015.  <u>Exhibit 34</u>.

75.     In a letter dated November 23, 2015, Wells Fargo, through its representative Cindy Morris, responded to Plaintiffs' credit reporting dispute letters indicating that the credit reporting should have reported payments as current from January 2015 through May 2015.  <u>Exhibit 35</u>. Wells Fargo indicated that it had submitted updated reporting but was still researching the balance

and discharge statuses reported to the Credit Reporting Agencies, as well as its need for more time, until December 8, 2015, to research the outstanding items.  *Id.*

76.     In a letter dated December 4, 2015, Wells Fargo, through its representative Cindy Morris, provided a final response Plaintiffs' October 5, 2015 credit reporting dispute letters. Exhibit 36.  The letter indicated that Wells Fargo updated credit reporting from January 2015 through April 2015 "to show current" and "confirmed that the discharge of the bankruptcy was reported May 2015, with no zero balance reporting."  *Id.*  Wells Fargo did not address the status or comment lines in its response.  *Id.*

77.     On December 19, 2015, Mr. Anderson again reviewed his credit reports and found that errors remained regarding the account with Wells Fargo.

78.     On December 22, 2015, Plaintiffs' counsel sent a detailed Notice of Error on behalf of Plaintiffs indicating the following credit reporting errors and requesting notification of correction, the date of the correction, and copies of information submitted by Wells Fargo to the Credit Reporting Agencies.  A copy of the December 22, 2015 Notice of Error, with credit report and authorization enclosures only, is attached hereto as Exhibit 37.[2]

12/19/2015 TransUnion Report, for Tony Anderson
- No trade line reported.

12/19/2015 Experian Report, for Tony Anderson
- As Reported:
  - Account History: 02/2015 (30 days delinquent), 03/2015 (60 days delinquent), 04/2015 (90 days delinquent)
- *Balance and account histories should reflect payments made for all months with no delinquencies.*

12/19/2015 Equifax Report, for Tony Anderson
- As Reported:

---

[2] Exhibit 37 omits voluminous enclosures which were sent to Wells Fargo with the December 22, 2015 Notice of Error and are included as separate exhibits to Plaintiffs' Petition, specifically Exhibits 16, 22, 32, 35, and 36, containing written correspondence between Plaintiffs and Wells Fargo regarding the credit reporting dispute.

     o Account Condition: Closed, Balance Amount: $0; Comments/Remarks: Account involved in Chapter 13 Debt Adj., Real Estate Mortgage

   • *Balance should include the current principal balance, rather than $0.00, as this debt was not discharged and was specifically NOT involved in the borrower's Chapter 13 plan.*

*Id.*

79. On or about December 28, 2015, Wells Fargo sent a letter to Plaintiffs' counsel acknowledging receipt of the December 22, 2015 Notice of Error and stating an anticipated response date of January 12, 2016.  Exhibit 38.

80. On or about January 12, 2016, Wells Fargo sent a letter to Plaintiffs' counsel indicating that it expected to complete its response to Plaintiffs' December 22, 2015 Notice of Error by January 27, 2016.  Exhibit 39.

81. On January 14, 2016, Plaintiffs sent a second Notice of Error to Wells Fargo requesting response to the items Wells Fargo did not provide in its response to Plaintiffs' July 28, 2015 Request for Information, including an exact reproduction of the information kept in its system of record for its transaction history, as requested in Item No. 1, the information requested in Item Nos. 2 and 3 regarding reasons why Wells Fargo held payments and sent a delinquency letter demanding $-1.50, and documents or information relied upon in Wells Fargo's decision to withhold that information in its December 4, 2015 response.  Exhibit 40.

82. On January 15, 2016, Plaintiffs sent a second Request for Information to Wells Fargo requesting all servicing notes for the life of the loan, including but not limited to all NOTS screens, and any servicing notes appearing in other areas of Wells Fargo's servicing software and databases, including archived information.  Exhibit 41.

83. On or about January 19, 2016, Wells Fargo sent a letter to Plaintiffs' counsel acknowledging receipt of what Plaintiffs believe to be the January 14, 2016 Notice of Error and stating an anticipated response date of February 2, 2016.  Exhibit 42.

84.     On or about January 27, 2016, Wells Fargo, through its representative Rodney Harris, sent a letter to Plaintiffs' counsel stating that it found no error concerning the Plaintiffs' credit reporting and that it would not be making any adjustments to the account. Exhibit 43. Wells Fargo restated the corrections it allegedly made effective November 25, 2015 and that the discharge and balance reporting were correct. *Id.* Wells Fargo further stated that it was still researching Plaintiffs' request for servicing notes. *Id.*

85.     On or about January 28, 2016, Wells Fargo, through its representative Rodney Harris, sent a letter to Plaintiffs' counsel restating items in its January 27, 2016 letter regarding the credit reporting errors and refusing to provide Plaintiffs with servicing notes for their loan, claiming that such notes are "confidential, privileged, and/or proprietary" and that a subpoena would be required to obtain such documents. Exhibit 44.

86.     On February 2, 2016, Plaintiffs requested updated credit reports from TransUnion, Experian, and Equifax.

87.     On February 12, 2016, Plaintiffs sent a third Request for Information to Wells Fargo requesting information and documents it relied upon in determining that the servicing notes pertaining to Plaintiffs' loan qualified as "confidential, privileged, and/or proprietary" and the reasons Wells Fargo believes these notes are "confidential, proprietary or privileged" within the meaning of 12 CFR 1024.36(f). Exhibit 45. Plaintiffs also attached the Plaintiffs' January 15, 2016 Request for Information and Wells Fargo's January 28, 2016 response. *Id.*

88.     On February 12, 2016, Plaintiffs sent a third Notice of Error to Wells Fargo in response to Wells Fargo's refusal to produce servicing notes to Plaintiffs, applying the Bureau of Consumer Financial Protection's Official Interpretations to define what constitutes "confidential, privileged, and/or proprietary" within the meaning of 12 CFR 1024.36(f) and demanding, at the

very least, copies of servicing notes with redactions for any information that may fall under the "confidential, privileged, and/or proprietary" exception. <u>Exhibit 46</u>.

89.    On or about February 18, 2016, Wells Fargo sent a letter to Plaintiffs' counsel acknowledging receipt of Plaintiffs' February 12, 2016 Request for Information and/or Notice of Error and stating an anticipated response date of March 3, 2016. <u>Exhibit 47</u>.

90.    On or about February 26, 2016, Wells Fargo sent a response letter to Plaintiffs' February 12, 2016 Request for Information and/or Notice of Error stating that Wells Fargo received a similar request and sent a response on January 28, 2016 and enclosing a copy of the January 28, 2016 response, without addressing any of the concerns raised in Plaintiffs' February 12, 2016 Request for Information and/or Notice of Error. <u>Exhibit 48</u>.

91.    As of February 12, 2016, the following errors existed with regard to credit reporting of Plaintiffs' loan with Wells Fargo. Excerpts from the February 2016 credit reports pertaining to Plaintiffs' loan with Wells Fargo are attached hereto as <u>Exhibit 49</u>.

<u>02/12/2016 TransUnion Report, File No. 327740445, for Tony Anderson</u>

- No record for Wells Fargo Mortgage Loan No. *936029560\*\*\*\**

<u>02/11/2016 TransUnion Report, File No. 352533208, for Hanna Anderson – No Errors Alleged</u>

- Wells Fargo Mortgage Loan No. *936029560\*\*\*\** As Reported
  - Balance: $270,718; Last Payment Made: 02/2016; OK Rating for all months from loan inception through present; Current; Paid or Paying as Agreed

<u>02/16/2016 Experian Report, Report No. 2961-9154-22, for Tony Anderson</u>

- Wells Fargo Mortgage Loan No. *936029560\*\*\*\** As Reported
  - Balance: $270,718 as of Feb 2016; Last Payment Made: 02/2016; OK Rating for all months from loan inception through present, but incorrect date payment received, "ND" reported for January through May 2015, and a large payment of $11,945.00 reported as paid in June 2015; Open/Never late.; Comment: "Completed investigation of FCRA

dispute – consumer disagrees.   This item was updated from our processing of your dispute in Oct 2015."

02/16/2016 Experian Report, Report No. 0545-9793-04, for Hanna Anderson

- Wells Fargo Mortgage Loan No. *936029560*\*\*\*\* As Reported
  - o Balance: $270,718 as of Feb 2016; Last Payment Made: 02/2016; OK Rating for all months from loan inception through present, but incorrect date payment received, "ND" reported for January through May 2015, and a large payment of $11,945.00 reported as paid in June 2015; Open/Never late.; Comment: "Completed investigation of FCRA dispute – consumer disagrees.   This item was updated from our processing of your dispute in Oct 2015."

02/11/2016 Equifax Report, Confirmation No. 6042009150, for Tony Anderson

- Wells Fargo Mortgage Loan No. *936029560*\* As Reported
  - o Balance: $270,718 as of 02/2016; Date of Last Payment: 02/2016; Status – Pays As Agreed; Additional Information - "Consumer Disputes After Resolution."   Historical Account Information is largely omitted, including only payments for 12/15 and 01/16.

02/10/2016 Equifax Report, Confirmation No. 6041052398, for Hanna Anderson

- Wells Fargo Mortgage Loan No. *936029560*\* As Reported
  - o Balance: $271,246 as of 01/07/2016; Date of Last Payment: 12/2015; Status – Pays As Agreed; Additional Information - "Consumer Disputes After Resolution."   Historical Account Information is omitted.

92.     As set forth above, Plaintiffs have sent multiple requests to the Credit Reporting Agencies and Wells Fargo to correct the credit reporting errors and provide other information related to the servicing of Plaintiffs' mortgage loan.  Despite its claims to the contrary, Wells Fargo has never fully or adequately responded to Plaintiffs' inquiries or requests.  Further, Defendants continue to report incorrect or incomplete information on Plaintiffs' credit reports.

93.     Plaintiffs have been damaged by Wells Fargo's misapplication of funds and Defendants' incorrect credit reporting, which Plaintiffs continue to dispute.  Plaintiffs, both jointly and as individuals, have experienced credit denial, delay of credit, and higher interest rates as a result of Defendants' incorrect reporting of delinquencies on their credit reports.

94.     Plaintiff Hanna Anderson received a letter from USAA Federal Savings Bank, dated December 26, 2014, denying Ms. Anderson's credit request for the following reasons:

    a.  Wage Earner Plan or Bankruptcy
    b.  Delinquent past or present credit obligations
    c.  Collection action or judgment or foreclosure or repossession or garnishment or attachment or lien
    d.  Time since most recent account opening is too short

Exhibit 50.  The letter also reports Ms. Anderson's credit score as 755 (as reported by Equifax), stating key factors adversely affecting her credit score as "Time since most recent account opening is too short," "Proportion of balances to credit limits is too high on bank revolving or other revolving accounts," "too many accounts with balances," and "length of time accounts have been established." *Id.*

95.     Plaintiff Tony Anderson received a letter from USAA Federal Savings Bank, dated December 26, 2014, denying Ms. Anderson's credit request for the following reasons:

    a.  Wage Earner Plan or Bankruptcy
    b.  Delinquent past or present credit obligations
    c.  Collection action to judgment or foreclosure or repossession or garnishment or attachment or lien
    d.  Time since most recent account opening is too short

Exhibit 51.  The letter also reports Mr. Anderson's credit score as 568 (as reported by Equifax), stating key factors adversely affecting his credit score as "Serious delinquency and public record or collection filed," "Time since delinquency is too recent or unknown," "Number of accounts with delinquency," "Length of time since derogatory public record or collection is too short," and "Too many inquiries last 12 months." *Id.*

96.     Plaintiff Hanna Anderson received a letter from BVAA Compass Consumer Finance, dated May 11, 2015, denying Ms. Anderson's credit request and reflecting Ms. Anderson's credit score as 602 (as reported by TransUnion), stating key factors adversely affecting her credit score as "time since delinquency is too recent or unknown," "number of accounts with

delinquency," "amount owed on delinquent accounts," "serious delinquency," and "the number of inquiries on the consumers credit file has adversely affected the credit score ." Exhibit 52.

97.     Plaintiff Tony Anderson also received a letter from BVAA Compass Consumer Finance, dated May 11, 2015, denying Mr. Anderson's credit request and reflecting Mr. Anderson's credit score as 643 (as reported by TransUnion), stating key factors adversely affecting his credit score as "level of delinquency on accounts," "time since delinquency is too recent or unknown," "number of accounts with delinquency," "serious delinquency and public record or collection filed," and "the number of inquiries on the consumers credit file has adversely affected the credit score ." Exhibit 53.

98.     Plaintiff Hanna Anderson received a letter from Toyota Motor Credit Corporation, dated May 23, 2015, denying Ms. Anderson's credit request for the following reasons:

   a. Unsatisfactory ratio of number credit accounts to number credit accounts performing satisfactorily as agreed
   b. Present delinquency or collection status with others
   c. Past / present delinquency or chargeoff or collection status with others within the past 24 months
   d. Recent past / present delinquency or collection status with others

Exhibit 54.  The letter also reports Ms. Anderson's credit score as 690 (as reported by Equifax), stating key factors adversely affecting her credit score as "serious delinquency," "time since delinquency is too recent or unknown," "length of time accounts have been established," and "number of accounts with delinquency." Id.

99.     Plaintiff Tony Anderson also received a letter from Toyota Motor Credit Corporation, dated May 23, 2015, denying Mr. Anderson's credit request for the following reasons:

   a. Unsatisfactory ratio of number credit accounts to number credit accounts performing satisfactorily as agreed
   b. Present delinquency or collection status with others

      c.  Past / present delinquency or chargeoff or collection status with others within the past 24 months

      d.  Recent past / present delinquency or collection status with others

Exhibit 55.  The letter also reports Mr. Anderson's credit score as 635 (as reported by Equifax), stating key factors adversely affecting his credit score as "serious delinquency and derogatory Public Record or Collection filed," "time since delinquency is too recent or unknown," "number of accounts with delinquency", and "too many inquiries lat [sic] 12 months."  *Id.*

    100.   Plaintiff Hanna Anderson received a letter from JPMorgan Chase Bank, N.A., dated May 13, 2015, denying Ms. Anderson's credit request for the following reasons:  "CREDIT REPORT REFELCTS DELINQUNCY, CHARGE OFF AND/OR LEGAL ACTION."  Exhibit 56.  The letter also reports Ms. Anderson's credit score as 690 (as reported by Equifax), stating key factors adversely affecting her credit score as "serious delinquency," "time since delinquency is too recent or unknown," "length of time accounts have been established," and "number of accounts with delinquency."  *Id.*

    101.   Plaintiff Tony Anderson also received a letter from JPMorgan Chase Bank, N.A., dated May 13, 2015, denying Mr. Anderson's credit request for the following reasons:  "CREDIT REPORT REFELCTS DELINQUNCY, CHARGE OFF AND/OR LEGAL ACTION."  Exhibit 57.  The letter also reports Mr. Anderson's credit score as 635 (as reported by Equifax), stating key factors adversely affecting his credit score as "serious delinquency and derog pub recd or collection filed," "time since delinquency is too recent or unknown," "number of accounts with delinquency", and "too many inquiries last 12 months."  *Id.*

    102.   Mrs. Anderson was not involved in bankruptcy and is fairly new to the American credit market, having first obtained credit through the purchase of Plaintiffs' homestead property and the loan at issue in this case in December 2012, before moving to the United States with Mr. Anderson in March 2013.

103.    Plaintiff Hanna Anderson had no adverse reporting on her credit report that would have resulted in denial of credit other than the incorrect negative reporting related to the home mortgage loan with Wells Fargo.

104.    The credit denial letters from USAA Federal Savings Bank, Toyota Motor Credit Corporation, and JPMorgan Chase Bank, N.A. at Exhibits 50, 54, and 56 reflect a decrease in Hanna Anderson's credit score, as obtained by lenders from Equifax, from 755 in December 2014 to 690 in May 2015, and denials based on an alleged payment delinquency that never existed.

105.    As of the time of filing this petition, Plaintiffs have incurred at least $321.00 in out-of-pocket expenses for credit report charges and postage and at least $39.10 in mileage to and from their attorneys' offices in their efforts to dispute and resolve Wells Fargo's incorrect credit reporting of the loan.[3]

106.    Plaintiffs have also incurred additional damages of approximately $596.80 due to a higher interest rate and monthly payments when Plaintiffs were finally approved for credit to purchase a vehicle on May 15, 2015.[4]

107.    Defendants' actions in incorrectly reporting the Plaintiffs' payment information and loan status, and failing to appropriately correct such errors, has put Mr. Anderson's employment at risk.  As a condition to Mr. Anderson's Top Secret security clearance, which is required for his current position with the United States Navy, he is subject to continuous evaluation and reinvestigation regarding his financial stability and his ability to appropriately manage his

---

[3] Mr. Anderson traveled 68 miles round trip for one in-office appointment with his attorneys, in addition to many phone calls over the course of several months.  Plaintiffs used the 2015 IRS standard mileage rate of $0.575 per mile to calculate mileage damages.

[4] Interest-related damages are calculated using the payments set forth in Plaintiffs' May 15, 2015 vehicle purchase contract, calculated at 8.5% interest, minus what those payments would have been had the financed amount been amortized over five years at 2.3%, the rate Mrs. Anderson obtained on a separate vehicle on December 27, 2014, just prior to Wells Fargo's inaccurate reporting of the alleged payment delinquency related to Plaintiffs' mortgage loan. *See* Exhibits 58 and 59.  The vehicle purchased on May 15, 2015 was traded for a different vehicle in January 2016 and the loan paid in full on February 4, 2016.

financial affairs, which speaks to the Navy's concern of susceptibility to coercion when dealing with foreign entities.  As such, incorrect credit reporting has the potential to uproot Mr. Anderson from his current position, affecting his livelihood and discounting the years of military service Mr. Anderson put in to achieve his current position as Officer in Charge for the U.S. Navy Joint Reserve Intelligence Center in Fort Worth.

108.    Plaintiffs have also been forced to hire counsel to resolve their disputes with Defendants, thereby incurring reasonable attorneys' fees and costs, which continue to accrue.

109.    As a result of Defendants' activities, Plaintiffs have incurred actual damages, including attorneys' fees and out-of-pocket expenses, and has suffered physically, mentally, and emotionally.

### V.  CAUSES OF ACTION

#### COUNT I
#### (VIOLATION OF THE DISCHARGE INJUNCTION
#### PURSUANT TO 11 U.S.C. § 524 AS TO WELLS FARGO)

110.    The allegations in the paragraphs above are re-alleged and incorporated herein by this reference.

111.    Wells Fargo has violated 11 U.S.C. § 524(i) by failing to properly apply funds received from the Plaintiffs in accordance with the provisions of Mr. Anderson's confirmed Chapter 13 plan, instead holding funds received during bankruptcy as "unapplied" in a manner which caused actual material injury to the Plaintiffs.

112.    As such, Wells Fargo's failure to properly apply the Plaintiffs' payments also constitutes a gross violation of the discharge order as set forth in 11 U.S.C. § 524(a) and entered in this case on May 21, 2014.

113.    Wells Fargo has violated 11 U.S.C. § 524 by reporting erroneous information to the Credit Reporting Agencies regarding Mr. Anderson's bankruptcy and the status of Plaintiffs'

mortgage loan post-discharge.

114.    Upon information and belief, Wells Fargo's conduct as described herein is part of a general pattern and practice of conduct by Wells Fargo, which is either expressly authorized by, or not specifically prohibited by, Wells Fargo's policies and procedures.

115.    Wells Fargo's acts constitute willful violations of the discharge injunction under 11 U.S.C. § 524.   Wells Fargo participated in and had notice of all filings in Mr. Anderson's bankruptcy and knew of his intentions and treatment of his mortgage loan as set forth in his Chapter 13 plan.   Further, Wells Fargo knew Plaintiffs had made, and it had received, all post-petition payments due related to the Plaintiffs' mortgage loan.   Wells Fargo's actions were intentional, and the acts alleged herein violated the provisions and purposes of the Bankruptcy Code.

116.    Plaintiffs have suffered actual damages, including increased costs of credit, increased interest rates and payments to Wells Fargo in the form of vehicle payments, attorneys' fees, and out-of-pocket expenses, amongst others, and has suffered physically, mentally, and emotionally as a result of Wells Fargo's willful violations of this Court's discharge order and the discharge injunction.

117.    Title 11 U.S.C. § 105(a) of the Code grants power to the Court to remedy Wells Fargo's violations of numerous sections of the Bankruptcy Code.   Section 105(a) allows the Court to exercise its equitable powers where necessary or appropriate to facilitate implementation of Code provisions, including the granting of sanctions for contempt, the granting of monetary relief for actual and statutory damages, punitive damages, attorneys' fees and costs, and the imposition of temporary and permanent injunctions.

118.    Therefore, Plaintiffs seek actual damages, sanctions and punitive damages, and payment of Plaintiffs' attorneys' fees and costs for Wells Fargo's violations of 11 U.S.C. § 524.

<u>COUNT II</u>
**(VIOLATIONS OF THE FAIR CREDIT REPORTING ACT AS TO WELLS FARGO)**

119.    The allegations in the paragraphs set forth above are re-alleged and incorporated herein by this reference.

120.    Plaintiffs are "consumers" as that term is defined by 15 U.S.C. § 1681a(c).

121.    Wells Fargo is a "furnisher" of consumer information as defined by 12 CFR 1022.41(c) and as described throughout the Fair Credit Reporting Act ("FCRA"), as Wells Fargo regularly reports consumer account information to the Credit Reporting Agencies for inclusion in credit reports.

122.    Wells Fargo willfully violated 15 U.S.C. § 1681s-2(b) by failing to adequately investigate and correct inaccurate credit reporting information with the Credit Reporting Agencies following the Plaintiffs' formal reinvestigation requests with the Credit Reporting Agencies under 15 U.S.C. § 1681i.

123.    Plaintiffs submitted dispute letters to the Credit Reporting Agencies on October 5, 2015, including information regarding Mr. Anderson's Chapter 13 plan and discharge date and payment records to support their allegations of incorrect reporting, as well as all other relevant information.

124.    Wells Fargo received copies of Plaintiffs' dispute letters to the Credit Reporting Agencies on October 9, 2015.

125.    Upon information and belief, Wells Fargo received an inquiry from each credit reporting agency as a part of the Credit Reporting Agencies' investigations into each dispute letter submitted by the Plaintiffs.

126.    Upon information and belief, Wells Fargo failed to adequately investigate Plaintiffs' disputes raised in their letters to the Credit Reporting Agencies.

127.     Upon information and belief, Wells Fargo failed to review all relevant information provided by the Credit Reporting Agencies and by Plaintiffs in relation to each dispute letter sent to the Credit Reporting Agencies by Plaintiffs.

128.     Upon information and belief, Wells Fargo failed to conduct and report the results of a complete investigation into each dispute raised by Plaintiffs in their letters to the Credit Reporting Agencies.

129.     Upon information and belief, Wells Fargo failed to promptly delete, modify, or block reporting of inaccurate, incomplete, or unverifiable information in response to each dispute raised by Plaintiffs in their letters to the Credit Reporting Agencies.

130.     Upon information and belief, Wells Fargo failed to fully correct the information it supplied to the Credit Reporting Agencies regarding Plaintiffs' account.

131.     Upon information and belief, Wells Fargo has also breached its duties as set forth in 15 U.S.C. § 1681s-2(a) by failing to adequately investigate and fully correct inaccurate credit reporting information with the Credit Reporting Agencies following the Plaintiffs' numerous notifications and clarifications sent directly to Wells Fargo concerning the credit reporting errors.

132.     Upon information and belief, in the event that Wells Fargo submitted corrections to the Credit Reporting Agencies regarding Plaintiffs' account, it failed to correct its own records such that it would prevent re-reporting of the incorrect information in subsequent automatic system submissions to the Credit Reporting Agencies.

133.     Plaintiffs have suffered actual damages, including increased costs of credit, increased interest rates and payments to Wells Fargo in the form of vehicle payments, attorneys' fees, and out-of-pocket expenses, amongst others, and has suffered physically, mentally, and emotionally as a result of Wells Fargo's willful violations of the Fair Credit Reporting Act.

134.     Based on Wells Fargo's violations of 15 U.S.C. § 1681s-2(b), Plaintiffs are entitled

to actual damages, costs, and attorneys' fees pursuant to 15 U.S.C. § 1681o.

135.    Wells Fargo's willful conduct entitles Plaintiffs to statutory and punitive damages under 15 U.S.C. § 1681n, in addition to actual damages, costs, and attorneys' fees.

## COUNT III
### (VIOLATIONS OF THE FAIR CREDIT REPORTING ACT AS TO EQUIFAX, TRANSUNION, AND EXPERIAN)

136.    The allegations in the paragraphs set forth above are re-alleged and incorporated herein by this reference.

137.    Plaintiffs are "consumers" as that term is defined by 15 U.S.C. § 1681a(c).

138.    Experian, TransUnion, and Equifax each qualify as a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f) as each, "for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports."  15 U.S.C. § 1681a(f).

139.    Plaintiffs submitted dispute letters to the Credit Reporting Agencies on October 5, 2015, including information regarding Mr. Anderson's Chapter 13 plan, his discharge, and payment records to support Plaintiffs' allegations of inaccurate information contained in their credit reports, as well as all other relevant information.  *See supra* at ¶¶ 56-57.

140.    Upon information and belief, the Credit Reporting Agencies failed to follow reasonable procedures to ensure maximum accuracy pursuant to 15 U.S.C. § 1681e(b), as evidenced by their reporting of the Plaintiffs' mortgage loan as "discharged," contrary to the Order granting Mr. Anderson's discharge in bankruptcy, which is public record.

141.    Upon information and belief, the Credit Reporting Agencies' reporting of mortgage loan debts as "discharged" when the debts are not in fact discharged through bankruptcy is part of

a pattern and practice of noncompliance with 15 U.S.C. § 1681e(b) with respect to this type of debt.

142.    The Credit Reporting Agencies failed to modify or delete all inaccurate, incomplete, or unverifiable information, pursuant to 15 U.S.C. § 1681i(a)(5), after inaccuracies were brought to their attention by Plaintiffs in Plaintiffs' October 5, 2015 dispute letters and after receiving documentation of those inaccuracies, including Wells Fargo's own record of receipt of timely payments from the Plaintiffs.

143.    The Credit Reporting Agencies failed to consider information provided by Plaintiffs in support of their claims of inaccuracies in reported information, pursuant to 15 U.S.C. § 1681i(a)(4).

144.    Upon information and belief, the Credit Reporting Agencies failed to follow their established reinvestigation procedures pursuant to 15 U.S.C. § 1681i.

145.    Upon information and belief, the Credit Reporting Agencies' conduct as described herein fell below, or breached, the standard of care of a reasonable or prudent person in the circumstances, as industry practice and regulation dictate compliance with the provisions of the Fair Credit Reporting Act and the following of procedures each should have in place as required by the Fair Credit Reporting Act.[5]

146.    Alternatively, Plaintiffs contend that the Credit Reporting Agencies' conduct as described herein was made with malice, willful intent, and/or reckless disregard for the truth of information reported.

147.    Plaintiffs have suffered actual damages, including increased costs of credit,

---

[5] Indeed, the Congressional findings and statement of purpose codified at 15 U.S.C. § 1681 states that the purpose of the FCRA is "to require that consumer reporting agencies *adopt reasonable procedures* for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information in accordance with the requirements of this title." 15 U.S.C. § 1681(b) (emphasis added).

increased interest rates and payments to Wells Fargo in the form of vehicle payments, attorneys' fees, and out-of-pocket expenses, amongst others, and has suffered physically, mentally, and emotionally as a result of the Credit Reporting Agencies' violations of the Fair Credit Reporting Act as set forth herein.

148.    Based on the Credit Reporting Agencies' violations of 15 U.S.C. § 1681e(b), 15 U.S.C. § 1681i(a)(5), 15 U.S.C. § 1681i(a)(4), and 15 U.S.C. § 1681i, Plaintiffs are entitled to actual damages, costs, and attorneys' fees pursuant to 15 U.S.C. § 1681o.

149.    The Credit Reporting Agencies' conduct, if found to be with malice, willful, or reckless, entitles Plaintiffs to statutory and punitive damages under 15 U.S.C. § 1681n, in addition to actual damages, costs, and attorneys' fees.

## <u>COUNT IV</u>
## (VIOLATIONS OF THE REAL ESTATE SETTLEMENT PROCEDURES ACT AS TO WELLS FARGO)

150.    The allegations in the paragraphs set forth above are re-alleged and incorporated herein by this reference.

151.    In January 2013, the Consumer Financial Protection Bureau ("CFPB") issued a number of final rules concerning mortgage markets in the United States, pursuant to the Dodd-Frank Wall Street Reform and Consumer Protection Act (DFA), Public Law No. 111-203, 124 Stat. 1376 (2010).

152.    Specifically, on February 14, 2013, the CFPB issued the Amended Real Estate Settlement Procedures Act (Regulation X) ("RESPA"), 78 FR 10695 (Regulation X) (February 14, 2013).  This Regulation became effective on January 10, 2014.

153.    Plaintiffs' mortgage loan at issue is a "federally related mortgage loan" as defined in 12 U.S.C. § 2602(1) and is therefore subject to RESPA.

154.    Wells Fargo is subject to the Regulations and does not qualify for any of the

exceptions noted in the said Regulations for "small servicers."  Neither is Wells Fargo a "qualified lender," as defined in 12 CFR § 617.7000.

155.    As discussed in detail above, Plaintiffs and their counsel sent multiple letters to Wells Fargo disputing Wells Fargo's reporting of their mortgage loan to the Credit Reporting Agencies and requesting information regarding Plaintiffs' loan account.

156.    All letters sent by Plaintiffs and their counsel constitute Requests for Information under 12 C.F.R. § 1024.36 or Notices of Error under 12 C.F.R. § 1024.35.

157.    Wells Fargo failed to provide Plaintiffs with meaningful investigation and responses to each of Plaintiffs' Requests for Information and Notices of Error and further failed to provide all of the information requested in each letter, particularly with regard to Plaintiffs' requests to correct credit reporting related to their mortgage loan, to provide reasons why Wells Fargo improperly withheld funds as unapplied, and to provide servicing notes related to Plaintiffs' loan.

158.    Wells Fargo's failure to respond appropriately to Plaintiffs' Requests for Information and Notices of Error violates 12 U.S.C. § 2605.

159.    Wells Fargo has demonstrated a pattern and practice of failing to comply with the Regulations by failing to appropriately and fully respond to Plaintiffs' Requests for Information and Notices of Error.

160.    Besides other pending lawsuits, since January 10, 2014, the Consumer Financial Protection Bureau ("CFPB"), the agency charged with enforcing RESPA, has collected more than 12,500 consumer complaints against Wells Fargo, with more than 3,500 consumer complaints against Wells Fargo in connection to loan servicing, payments, and/or escrow account activities

regarding residential mortgages.[6]

161.    A review of the over 12,500 complaints since January 10, 2014 (and over 26,000 complaints since December 2011) show that Wells Fargo has a pattern or practice of noncompliance with regard to their mortgage servicing activities, including compliance with RESPA and its provisions.[7]

162.    According to the CFPB Monthly Complaint Report Volume 12 (June 2016), Wells Fargo received the fifth most complaints to the CFPB from January 2016 – March 2016, trailing only the three Credit Reporting Agencies and Bank of America, and received more consumer mortgage related CFPB complaints than any other company.[8]

163.    Wells Fargo has maintained the same (or worse) rankings for the five prior reporting periods, as provided in CFPB Monthly Complaint Reports for January 2016 – May 2016.[9] [10]

---

[6] Consumer Financial Protection Bureau Consumer Complaint Database, accessed July 5, 2016, *available at* http://www.consumerfinance.gov/data-research/consumer-complaints/

[7] *Id.*

[8] CFPB Monthly Complaint Report Volume 12 at Page 10, Figure 1 (June 2016), *available at* http://files.consumerfinance.gov/f/documents/Monthly_Complaint_Report_-_June_2016.pdf

[9] CFPB Monthly Complaint Report Volume 11 at Page 9, Figure 1 (May 2016), *available at* http://files.consumerfinance.gov/f/documents/201605_cfpb_monthly-complaint-report-vol-11.pdf; CFPB Monthly Complaint Report Volume 10 at Page 9, Figure 1 (April 2016), *available at* http://files.consumerfinance.gov/f/documents/Monthly_Complaint_Report_-_April_2016.pdf; CFPB Monthly Complaint Report Volume 9 at Page 9, Figure 1 (March 2016), *available at* http://files.consumerfinance.gov/f/201603_cfpb_monthly-complaint-report-vol-9.pdf (indicating that Wells Fargo received more complaints than Bank of America for that reporting period); CFPB Monthly Complaint Report Volume 8 at Page 9, Figure 1 (March 2016), *available at* http://files.consumerfinance.gov/f/201603_cfpb_monthly-complaint-report-vol-8.pdf (same); CFPB Monthly Complaint Report Volume 7 at Page 9, Figure 1 (January 2016), *available at* http://files.consumerfinance.gov/f/201601_cfpb_monthly-complaint-report-vol-7.pdf (same).

[10] The CFPB Monthly Complaint Report for May 2016 spotlights credit reporting complaints made to the CFPB since July 21, 2011, as credit reporting is "the third most-complained-about product after debt collection and mortgage." CFPB Monthly Complaint Report Volume 11 at 11. While this spotlight report focused on credit reporting agencies specifically, Figure 1 indicates that some of Wells Fargo's consumer complaints from December 2015 – February 2016 related to credit reporting. *Id.* at 9, Figure 1.

164.    Plaintiffs have suffered actual damages, including increased costs of credit, increased interest rates and payments to Wells Fargo in the form of vehicle payments, attorneys' fees, and out-of-pocket expenses, amongst others, and has suffered physically, mentally, and emotionally as a result of Wells Fargo's willful violations of RESPA.

165.    Accordingly, Wells Fargo is liable to Plaintiffs for actual damages, costs, attorneys' fees, and statutory damages of at least $2,000.00 per violation, pursuant to 12 U.S.C. § 2605.

### COUNT V
### (VIOLATIONS OF THE TRUTH IN LENDING ACT
### AS TO WELLS FARGO)

1.    The allegations in the paragraphs above are realleged and incorporated herein by this reference.

2.    The Truth in Lending Act ("TILA") requires that, "in connection with a consumer credit transaction secured by a consumer's principal dwelling, no servicer shall fail to credit a payment to the consumer's loan account as of the date of receipt, except when a delay in crediting does not result in any charge to the consumer *or in the reporting of negative information to a consumer reporting agency*...." 15 U.S.C. § 1639f(a) (emphasis added).  Further, Regulation Z expands on the servicer's requirements in applying periodic mortgage payments, which it defines as "an amount sufficient to cover principal, interest, and escrow (if applicable) for a given billing cycle." 12 C.F.R. § 1026.36(c)(1)(i).

3.    Wells Fargo failed to timely and/or properly credit at least 4 payments made on the loan by the Plaintiffs, all which were more than sufficient to cover the Plaintiffs' contractually due amounts each month, including principal, interest, and escrow.

4.    Wells Fargo's failure to timely and/or properly credit Plaintiffs' mortgage payments violates 15 U.S.C. § 1639f and 12 C.F.R. § 1026.36(c)(1).

5.    Wells Fargo's failure to timely apply payments received to principal, interest, and

escrow wrongfully placed the Plaintiffs in a "default" status and therefore in peril of losing their home or rights under the VA loan program.

6.      Plaintiffs have suffered actual damages, including increased costs of credit, increased interest rates and payments to Wells Fargo in the form of vehicle payments, attorneys' fees, and out-of-pocket expenses, amongst others, and has suffered physically, mentally, and emotionally as a result of Wells Fargo's willful violations of TILA.

7.      Accordingly, Wells Fargo is liable to Plaintiffs for their actual damages, costs attorneys' fees and statutory damages of at least $4000 for each violation of TILA.  15 U.S.C. § 1640(a).

## <u>COUNT VI</u>
## (VIOLATIONS OF THE TEXAS DEBT COLLECTION ACT AS TO WELLS FARGO)

166.      The allegations in the paragraphs set forth above are re-alleged and incorporated herein by this reference.

167.      Plaintiffs are "consumers" as that term is defined by the Texas Debt Collection Practices Act, set forth in Chapter 392 of the TEX. FIN. CODE (the "TDCA"), because Plaintiffs are individuals with a consumer debt.

168.      The Plaintiffs' relationship with Wells Fargo arose out of a "consumer debt" as that term is defined in the TDCA, as the Plaintiffs' obligation to Wells Fargo arose from a transaction primarily for personal, family, or household purposes.

169.      Wells Fargo regularly collects consumer debts and is a "debt collector" as that term is defined in the TDCA, because Wells Fargo directly engages in debt collection.

170.      Wells Fargo violated § 392.304(a)(8) and (19) of the TDCA because it misrepresented the character, extent, and amount of the Plaintiffs' debts owed to Wells Fargo in statements sent to the Plaintiffs.

171.    Additionally, Defendant's erroneous credit reporting violates § 392.301(a)(3) of the TDCA by representing to persons other than the consumer that Plaintiffs willfully refused to pay a non-disputed consumer debt when the debt as reported was in dispute and the Plaintiffs notified Wells Fargo in writing on multiple occasions of the dispute.

172.    Plaintiffs have suffered actual damages, including increased costs of credit, increased interest rates, and increased payments to Wells Fargo in the form of vehicle payments, attorneys' fees, and out-of-pocket expenses, amongst others, and has suffered physically, mentally, and emotionally as a result of Wells Fargo's willful violations of the TDCA.

173.    Wells Fargo violated the TDCA, and Plaintiffs are thus entitled to actual damages, attorneys' fees, and injunctive relief pursuant to § 392.403 of the TDCA.

174.    Plaintiffs' injuries resulted from Wells Fargo's gross negligence because Wells Fargo continued to wrongfully report Plaintiffs' loan status after multiple attempts to correct the erroneous reporting, which further entitles Plaintiffs to exemplary damages pursuant to the TEX. CIV. PRAC. & REM. CODE § 41.003(a).

## COUNT VII
## (DEFAMATION AS TO WELLS FARGO)

175.    The allegations in the paragraphs set forth above are re-alleged and incorporated herein by this reference.

176.    Wells Fargo provided statements of fact regarding the Plaintiffs, their payment history, and the status of Plaintiffs' mortgage loan account to be published through the Credit Reporting Agencies.

177.    Wells Fargo may be held liable for the Credit Reporting Agencies republication of the false and defamatory statements because Wells Fargo's actions created a reasonable risk that the defamatory matter would be communication to other parties by the Credit Reporting Agencies.

178.    The published statements referred to the Plaintiffs and were false.

179.    The published statements were defamatory, as the false statements constituted an invasion of the Plaintiffs' interests in their reputations and good names.

180.    The publication of such false statements of fact about the Plaintiffs, their payment history, and the status of the Plaintiffs' mortgage loan account was done with actual malice and/or willful intent to injure the Plaintiffs.

181.    Actual malice is defined as publishing a statement with knowledge of or reckless disregard for its falsity.[11]

182.    Wells Fargo acted with actual malice and/or willful intent to injure the Plaintiffs because they willfully provided for publication false information regarding the Plaintiffs, their payment history, and the status of Plaintiffs' mortgage loan account with knowledge of the falsity of such information, having been informed of the truth repeatedly by Plaintiffs.

183.    Wells Fargo's publication of the false information regarding the Plaintiffs, their payment history, and the status of Plaintiffs' mortgage loan account was also done with reckless disregard for the truth, which is demonstrated by Wells Fargo's pattern of ignoring Plaintiffs' repeated disputes of such information as set forth above.

184.    Wells Fargo's malice may be inferred from the fact that Wells Fargo continually published false and misleading information regarding the Plaintiffs, their payment history, and the status of Plaintiffs' mortgage loan account to the Credit Reporting Agencies and by its failure to correct such statements after being specifically informed of the falsity of such information.

---

[11] *See New York Times v. Sullivan*, 376 U.S. 254, 279-80 (1964), *Neely v. Wilson*, 418 S.W.3d 52, 61 (Tex. 2013), *Turner v. KTRK TV, Inc.*, 38 S.W.3d 103, 120 (Tex. 2000), *Bentley v. Bunton*, 94 S.W.3d 561, 591 (Tex. 2002).

185.    Wells Fargo provided for publication the defamatory information both before and after notification of the falsity of such information by Plaintiffs.  Additionally, each time the false statements were presented to a third party, in the form of credit inquiries in this case, a new publication occurred.[12]

186.    Plaintiffs have suffered actual damages, including increased costs of credit, increased interest rates and payments to Wells Fargo in the form of vehicle payments, attorneys' fees, and out-of-pocket expenses, amongst others, and has suffered physically, mentally, and emotionally as a result of Wells Fargo's publication of defamatory statements.

187.    Plaintiffs are entitled to actual damages as a result of Wells Fargo's publication of defamatory statements.

## COUNT VIII
## (BREACH OF CONTRACT AS TO WELLS FARGO)

188.    The allegations in the paragraphs above are re-alleged and incorporated herein by this reference.

189.    On or about December 27, 2012, Plaintiffs executed a fixed rate mortgage Note with Blue Star Residential Lending, Inc. in the amount of $289,230.00, which was secured by a Deed of Trust against Plaintiffs' homestead property at 9401 Shoveler Trail, Fort Worth, Texas 76118, and guaranteed by the U.S. Department of Veterans Affairs.  *See* Exhibit 1.

190.    Wells Fargo is liable to Plaintiffs for breach of the payment application provisions contained in the December 27, 2012 Deed of Trust, which provide that the lender must apply full payments to interest, then principal, then escrow items.

191.    Plaintiffs' regular mortgage payments received by Wells Fargo between December 30, 2014 and April 30, 2014, all which were more than sufficient to satisfy each payment due as

---

[12] *See Renfro Drug Co. v. Lawson*, 160 S.W.2d 246, 251 (Tex. 1942).

demanded, were not applied in accordance with the terms of the Deed of Trust.  Instead, Wells Fargo deposited all four of Plaintiffs' full monthly payments at issue into an "Unapplied" account before finally applying all four payments on April 30, 2016.  *See* Exhibit 13.

192.    Plaintiffs have suffered actual damages, including increased costs of credit, increased interest rates and payments to Wells Fargo in the form of vehicle payments, attorneys' fees, and out-of-pocket expenses, amongst others, and has suffered physically, mentally, and emotionally as a result of Wells Fargo's failure to properly apply Plaintiffs' mortgage payments.

193.    As such, Wells Fargo liable to Plaintiffs for damages and attorney's fees pursuant to the Texas Civil Practice and Remedies Code § 38.001.

### COUNT IX
### (NEGLIGENCE AS TO WELLS FARGO)

194.    The allegations in the paragraphs above are re-alleged and incorporated herein by this reference.

195.    In a mortgagor-mortgagee relationship, a lender owes a borrower the duty to exercise reasonable care to avoid a foreseeable risk of injury to the borrower.  *Hurd v. BAC Loan Servicing, LP*, 880 F. Supp.2d 747, 763 (N.D. Tex. 2012) (citing *Thrash v. Ocwen Loan Servicing, LLC*, 433 B.R. 585, 598-97 (Bankr. N.D. Tex. 2010).  *See also Lukasik v. San Antonio Blue Haven Pools, Inc.*, 21 S.W.3d 394, 403 (Tex. App.—San Antonio 2008, no pet.)(citing *El Chico Corp. v. Poole*, 732 S.W.2d 306, 311 (Tex. 1987)(Every person has a duty to exercise reasonable care to avoid foreseeable risk of injury to others.)); *Trevino*, 2015 WL 3883180 at *26.

196.    Wells Fargo, as described *supra*, breached this duty by failing to properly apply Plaintiffs' timely mortgage payments and failing to properly report the status of Plaintiffs' payment history and mortgage loan account to the Credit Reporting Agencies.

197.    Plaintiffs have suffered actual damages, including increased costs of credit,

increased interest rates and payments to Wells Fargo in the form of vehicle payments, attorneys' fees, and out-of-pocket expenses, amongst others, and has suffered physically, mentally, and emotionally as a result of Wells Fargo's breach of its duty to exercise reasonable care to avoid a foreseeable risk of injury to the borrower.

198.    Plaintiffs would not have incurred the damages listed above but for Wells Fargo's breach of its duty as described herein.

199.    Wells Fargo knew or should have known that its actions as described herein could cause injury to the Plaintiffs.

200.    Plaintiffs seek to recover their general damages as well as exemplary damages related to Wells Fargo's negligence.

201.    Plaintiffs are entitled to actual damages, exemplary damages, and their reasonable attorneys' fees and costs.

## COUNT X
## (GROSS NEGLIGENCE AS TO WELLS FARGO)

202.    The allegations in the paragraphs above are re-alleged and incorporated herein by this reference.

203.    Wells Fargo, as described *supra*, breached its duty to exercise reasonable care in avoiding foreseeable injury to the Plaintiffs by failing to properly apply Plaintiffs' timely mortgage payments and failing to properly report the status of Plaintiffs' payment history and mortgage loan account to the Credit Reporting Agencies.

204.    Plaintiffs were damaged as a result of Wells Fargo's breach of this duty.

205.    Wells Fargo's failure to properly apply Plaintiffs' timely mortgage payments and failure to properly report the status of Plaintiffs' payment history and mortgage loan account to

the Credit Reporting Agencies objectively involved an extreme degree of risk and a high probability of substantial financial and emotional harm to the Plaintiffs.

206.    Wells Fargo was aware of the risks involved with regard to these actions and omissions and proceeded with conscious indifference to Plaintiffs' rights and welfare, even after notification of its errors by the Plaintiffs.

207.    Plaintiffs seek to recover their general damages as well as exemplary damages related to Wells Fargo's gross negligence.  Plaintiffs are entitled to actual damages, exemplary damages, and their reasonable attorneys' fees and costs.

## COUNT XI
### (ATTORNEYS' FEES)

208.    The allegations in the paragraphs set forth above are re-alleged and incorporated herein by this reference.

209.    Through the conduct described herein, Defendant has inflicted actual damages upon Plaintiffs by holding mortgage payments received and falsely reporting the delinquency of those payments as well as other inaccurate information to the Credit Reporting Agencies.

210.    The Court can award Plaintiffs attorneys' fees against Defendant pursuant to its inherent powers, 11 U.S.C. § 105(a), 15 U.S.C. §§ 1681o and 1681n (FCRA), 12 U.S.C. §2605(f)(3) (RESPA), 15 U.S.C. § 1640(a) (TILA), and § 392.403(b) of the TDCA.

## VI.  REQUEST FOR DECLARATORY RELIEF

211.    The allegations in the paragraphs set forth above are re-alleged and incorporated herein by this reference.

212.    As outlined in the preceding counts and the preceding factual allegations, the Defendant has violated the Bankruptcy Code.  Plaintiffs seek a declaration that Defendant's erroneous credit reporting with regard to Mr. Anderson's bankruptcy and Plaintiffs' post-discharge

loan status violates the Code, the discharge order, and the discharge injunction.

213.    Plaintiffs are entitled to attorneys' fees and costs pursuant to the Federal Declaratory Judgment Act.

## VII.  REQUEST FOR INJUNCTIVE RELIEF

214.    The allegations in the paragraphs set forth above are re-alleged and incorporated herein by this reference.

215.    As set forth above, Defendant violated the discharge injunction by erroneously reporting information regarding Mr. Anderson's bankruptcy and the status of Plaintiffs' mortgage loan post-discharge.

216.    The actions of Defendant show that it is its policy and procedure to ignore the directives and orders of the Bankruptcy Court and the Bankruptcy Code.

217.    Plaintiffs are entitled to an injunction requiring Defendant to correct wrongful credit reporting, and to otherwise remedy the adverse effects on the Plaintiffs of Defendant's illegal actions.

218.    Title 11 U.S.C. § 105 of the Code grants power to the Court to remedy the harms caused by Defendant's violations of the Code and orders of the Bankruptcy Court.  Section 105(a) allows the Court to exercise its equitable powers where necessary or appropriate to facilitate implementation of Code, including the granting of sanctions for contempt, injunctive relief, monetary relief for actual damages, including attorneys' fees and costs.

219.    Therefore, Plaintiffs seek injunctive relief that includes appropriate monetary sanctions, including payment of attorneys' fees and costs, for Defendant's violations as described herein.

220.    Plaintiffs also seek that the Court award Plaintiffs injunctive relief with regard to Defendant's erroneous reporting of Plaintiffs' loan status to the Credit Reporting Agencies pursuant to § 392.403(a)(1) of the TDCA.

## VIII.  ACTUAL DAMAGES, STATUTORY DAMAGES, PUNITIVE DAMAGES, AND SANCTIONS

221.    The allegations in the paragraphs set forth above are re-alleged and incorporated herein by this reference.

222.    As a result of Defendant's activities, Plaintiffs have incurred actual damages, including attorneys' fees, costs, and out-of-pocket expenses, and have suffered physically, mentally, and emotionally.

223.    Such damages are properly taxed against Defendant pursuant to the Court's inherent powers and its 11 U.S.C. § 105(a) powers by virtue of Defendant's violations of the discharge injunction.  Such attorneys' fees are also properly taxed against Defendant pursuant to 15 U.S.C. §§ 1681o and 1681n (FCRA), 12 U.S.C. §2605(f) (RESPA), 15 U.S.C. § 1640(a) (TILA), and § 392.403 of the TDCA.

224.    Plaintiffs seek that the Court award Plaintiffs their actual damages, hold Defendant in contempt, and impose all available statutory penalties, sanctions, and punitive damages in an amount sufficient to deter Defendant from future misconduct.

## IX.  DEMAND FOR JURY TRIAL

225.    Plaintiffs assert their right under the Seventh Amendment to the U.S. Constitution and demand, in accordance with Fed. R. Civ. P. 38, a jury trial on their claims against Defendants for violation of the Fair Credit Reporting Act, RESPA, TILA, the Texas Debt Collection Act, and state law claims.

## X. PRAYER

**WHEREFORE, PREMISES CONSIDERED,** Plaintiffs respectfully pray that Defendant be cited to appear and answer these allegations and that, upon final trial of this cause, Plaintiffs be granted all relief to which they is justly entitled, including:

a.  All actual and statutory damages, including attorneys' fees and costs (at trial and on appeal) to which Plaintiffs are entitled;

b.  All compensatory damages to which Plaintiffs are entitled, including actual damages, attorneys' fees and costs, exemplary damages, and/or punitive damages and sanctions, for Defendant's actions described herein;

c.  A declaration that Defendant is in contempt of 11 U.S.C. § 524;

d.  An injunction enjoining Defendant from engaging in the conduct described herein;

e.  An award of pre-judgment and post-judgment interest, as well as reasonable attorneys' fees and costs, pursuant to the Court's inherent and 11 U.S.C. § 105(a) powers, 15 U.S.C. §§ 1681o and 1681n, 12 U.S.C. §2605(f)(3), 15 U.S.C. § 1640(a), and § 392.403(b) of the TDCA; and

f.  Such other and further relief as this Court may deem just and proper.

Respectfully submitted,

*/s/ Theodore O. Bartholow, III ("Thad")*
Theodore O. Bartholow, III ("Thad")
State Bar No. 24062602
Karen L. Kellett
State Bar No. 11199520
Caitlyn N. Wells
State Bar No. 24070635
Megan F. Clontz
State Bar No. 24069703
Kellett & Bartholow PLLC
11300 N. Central Expressway
Suite 301
Dallas, TX 75243
(214) 696-9000
Fax: (214) 696-9001
thad@kblawtx.com

Justin M. Baxter
N.D. Texas Federal Bar No. 992178OR
Baxter & Baxter, LLP
8835 SW Canyon Lane, Suite 130
Portland, OR 97225
(503) 297-9031
justin@baxterlaw.com

Richard W. Anderson, III
State Bar No. 24045408
11520 N. Central Expy #212
Dallas, TX  75243
(469) 232-3328
Fax: (214) 221-1755

**ATTORNEYS FOR TONY V. ANDERSON
AND HANNA J. ANDERSON**