IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

TONY V. ANDERSON, *et al.*,          §
                                     §
          Plaintiffs,                §
                                     §
v.                                   §          Civil Action No. 3:16-CV-2514-N
                                     §
WELLS FARGO BANK, N.A. d/b/a         §
WELLS FARGO HOME MORTGAGE,           §
                                     §
          Defendant.                 §

## MEMORANDUM OPINION AND ORDER

This Order addresses (1) Defendant Wells Fargo Bank, N.A. d/b/a Wells Fargo Home Mortgage's ("Wells Fargo") (a) motion for summary judgment [60], (b) motion to strike [63], and (c) motion for leave to file an appendix in support of its summary judgment reply [93] and (2) Plaintiffs Tony V. Anderson and Hanna J. Anderson's (the "Andersons") (a) motion for leave to file a second amended brief in opposition to Wells Fargo's summary judgment motion [94] and (b) motion for leave to file a surreply [96]. For the reasons set forth below, the Court (1) grants in part and denies in part Wells Fargo's summary judgment motion; (2) grants in part and denies in part Wells Fargo's motion to strike; (3) grants Wells Fargo's motion for leave to file an appendix in support of its summary judgment reply; (4) grants the Andersons' motion for leave to file a second amended brief in opposition to Wells Fargo's summary judgment motion; and (5) denies the Andersons' motion for leave to file a surreply.

## I. ORIGINS OF THE DISPUTE

This case arises from Wells Fargo's handling of the Andersons' payments on their residential mortgage loan. On December 27, 2012, the Andersons executed a note in the amount of $289,230.00 (the "Note") made payable to Blue Star Residential Lending, Inc. with a maturity date of January 1, 2043. On the same day, the Andersons also executed a purchase money deed of trust (the "Deed of Trust," and together with the Note, the "Loan") that granted a security interest in the Andersons' homestead property to secure repayment of the Note. The Loan was assigned to Wells Fargo in March 2014. Wells Fargo is the current mortgage servicer of the Loan and assignee of the Deed of Trust.

On February 28, 2014, Tony V. Anderson ("Mr. Anderson") filed for Chapter 13 bankruptcy protection. The Andersons were not behind on their mortgage payments to Wells Fargo at that time. Mr. Anderson's Chapter 13 plan (the "Bankruptcy Plan") stated as follows:

> Wells Fargo holds a first mortgage on the Debtor's homestead property located at 9401 Shoveler Trail, Fort Worth TX 76118. This is a joint debt with Debtor's non-filing spouse and the Debtors are current with their payments to this creditor. The Debtor shall make the regular monthly payment . . . directly to the creditor outside the plan. The Trustee shall make no payments to this creditor.

App. in Supp. of Mot. for Sum. J. ("Sum. J. App.") 11 [62]. The Bankruptcy Plan also stated that, upon confirmation of the plan, Wells Fargo would have a duty:

> to apply the direct post-petition monthly mortgage payments paid by the Trustee or by the Debtor(s) to the month in which each payment was designated to be made under the plan or directly by the Debtor(s), whether or not such payments are immediately applied by the creditor to the outstanding

loan balance or are placed into some type of suspense, forbearance, or similar account.

*Id*. at 12. The Bankruptcy Court confirmed the Bankruptcy Plan on June 17, 2014, and discharged Mr. Anderson from bankruptcy on April 8, 2015.

From December 2014 until April 2015, the Andersons made timely payments on the Loan. But instead of crediting the payments to the Loan, Wells Fargo placed them in an unapplied funds account and issued mortgage statements to the Andersons indicating that they were behind on payments. On May 10, 2015, in response to the Andersons' inquiries, Wells Fargo applied all of the payments placed in unapplied funds to the Loan as a single lump sum with an effective date of April 30, 2015, rather than applying the payments as of the actual dates on which Wells Fargo received them.

The Andersons assert that although Wells Fargo accepted their payments, it reported the Loan as delinquent to numerous credit reporting agencies ("CRAs"). Wells Fargo also reported that instead of making timely monthly payments, the Andersons made one large payment on April 30, 2015, to cure their default. The Andersons now assert claims against Wells Fargo under the U.S. Bankruptcy Code, the Fair Credit Reporting Act ("FCRA"), the Real Estate Settlement Procedures Act ("RESPA"), the Truth in Lending Act ("TILA"), and the Texas Debt Collection Act ("TDCA"), along with common law claims for defamation, breach of contract, negligence, and gross negligence.

Wells Fargo now moves for summary judgment [60], to strike the Andersons' expert designation of Thomas A. Tarter [63], and for leave to file an appendix in support of its summary judgment reply [93]. The Andersons in turn move for leave to file an amended

response brief and surreply in opposition to Wells Fargo's summary judgment motion [94, 96]. The Court addresses each motion in turn.

## II. THE COURT GRANTS IN PART AND DENIES IN PART WELLS FARGO'S MOTION FOR SUMMARY JUDGMENT

Wells Fargo moves for summary judgment on each of the Andersons' claims [60]. The Court grants in part and denies in part Wells Fargo's motion.[1]

### A. The Summary Judgment Standard

Courts "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). In making this determination, courts must view all evidence and draw all reasonable inferences in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). The moving party bears the initial burden of informing the court of the basis for its belief that there is no genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

When a party bears the burden of proof on an issue, she "must establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in [her] favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis omitted). When the nonmovant bears the burden of proof, the movant may demonstrate entitlement to

---

[1] The Andersons move for leave to amend their brief in opposition to Wells Fargo's summary judgment motion to add pin citations to the summary judgment appendix [94]. The Court grants the Andersons' motion.

summary judgment by either (1) submitting evidence that negates the existence of an essential element of the nonmovant's claim or affirmative defense, or (2) arguing that there is no evidence to support an essential element of the nonmovant's claim or affirmative defense. *Celotex*, 477 U.S. at 322–25.

Once the movant has made the required showing, the burden shifts to the nonmovant to establish that there is a genuine issue of material fact such that a reasonable jury might return a verdict in its favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). Moreover, "[c]onclusory allegations, speculation, and unsubstantiated assertions" will not suffice to satisfy the nonmovant's burden. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc). Indeed, factual controversies are resolved in favor of the nonmoving party "'only when an actual controversy exists, that is, when both parties have submitted evidence of contradictory facts.'" *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 525 (5th Cir. 1999) (quoting *McCallum Highlands, Ltd. v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995)).

### B. The Court Sustains in Part and Overrules in Part Wells Fargo's Objections to the Andersons' Summary Judgment Evidence

Wells Fargo objects to portions of the Andersons' summary judgment evidence on various evidentiary grounds. The Court sustains in part and overrules in part Wells Fargo's objections.

*1. The Court Sustains in Part and Overrules in Part Wells Fargo's Objections to Statements in the Andersons' Declarations.* – Wells Fargo objects to a number of statements contained in the Andersons' declarations in support of their opposition to Wells Fargo's

summary judgment motion.  First, Wells Fargo objects to the following statement by Mr. Anderson: "Accordingly, both before I filed bankruptcy and after I emerged from bankruptcy, Wells Fargo should have reported our loan status as in good standing, open, and paid as agreed."  T. Anderson Dec. at ¶ 6, Pls.' App. 98 [79].  Wells Fargo argues that Mr. Anderson's declaration provides no factual predicate suggesting how he is qualified to offer any opinion regarding what "should have" been reported.  The Court agrees and sustains Wells Fargo's objection to Mr. Anderson's statement.

Second, Wells Fargo objects to the Andersons' statements that "Wells Fargo sent us a statement . . . indicating that the payment received by Wells Fargo . . . was held as 'Unapplied,' rather than applied to principal, interest, and escrow as required by the underlying note and deed of trust."  T. Anderson Dec. at ¶¶ 8, 10–12, Pls.' App. 98 [79]; H. Anderson Dec. at ¶ 4, Pls.' App. 81 [79].  Wells Fargo asserts that the statements are conclusory and impermissibly provide legal conclusions regarding the application of tendered legal payments.  The Court agrees that the Andersons' legal conclusions are impermissible and sustains Wells Fargo's objection with respect to the words "as required by the underlying note and deed of trust."

Wells Fargo's third and fourth objections challenge the Andersons' statements regarding their "frustrating" interactions with Wells Fargo and their asserted credit damages as a result of Wells Fargo's actions.  The Andersons' statements are relevant and admissible. The Court thus overrules Wells Fargo's objections.

Fifth, Wells Fargo objects to the Andersons' statements that Mrs. Anderson "had no adverse reporting on her credit report that would have resulted in denial of credit other than the incorrect negative reporting related to the home mortgage loan with Wells Fargo." T. Anderson Dec. at ¶ 58, Pls.' App. 112 [79]; H. Anderson Dec. at ¶ 51, Pls.' App. 93–94 [79]. Wells Fargo argues that the statements are unsubstantiated and that the Andersons do not explain how they are qualified to offer any opinion regarding what would have resulted in a denial of credit. The Court agrees that the Andersons have not shown that they are qualified to opine on what factors might result in denial of credit. The Court thus sustains Wells Fargo's objection with respect to the words "that would have resulted in denial of credit."

Sixth, Wells Fargo objects to the Andersons' statements that "[t]he credit denial letters from USAA Federal Savings Bank, Toyota Motor Credit Corporation, and JPMorgan Chase Bank, N.A. reflect a decrease in [Mrs. Anderson's] credit score, as obtained by lenders from Equifax, from 755 in December 2014 to 690 in May 2015, and denials based on an alleged payment delinquency that never existed." T. Anderson Dec. at ¶ 59, Pls.' App. 112 [79]; H. Anderson Dec. at ¶ 52, Pls.' App. 94 [79]. Wells Fargo argues that the statements are unsubstantiated and conclusory and are based on inadmissible hearsay. It further argues that the statements do not explain how Wells Fargo's actions were the substantial cause of any decline in the referenced credit scores. Finally, Wells Fargo contends that the statements do not explain how the Andersons know the "denials" were based on any alleged payment delinquency reported by Wells Fargo. The statements are not based on inadmissible hearsay.

But the statements provide no basis for the conclusion that Wells Fargo's reported delinquency caused the Mrs. Anderson's credit score to decline. The Court thus sustains Wells Fargo's objections with respect to the words "based on an alleged payment delinquency that never existed."

Seventh, Wells Fargo objects to the Andersons' purported out-of-pocket damages resulting from Wells Fargo's actions. Wells Fargo asserts that the Andersons provide no detail regarding when the expenses were incurred. The Court overrules Wells Fargo's objection.

Finally, Wells Fargo objects to the Andersons' statement that "[w]e also incurred damages of approximately $596.80 due to a higher interest rate and monthly payments when we were finally approved for credit to purchase a vehicle on May 15, 2015." T. Anderson Dec. at ¶ 61, Pls.' App. 113 [79]; H. Anderson Dec. at ¶ 54, Pls.' App. 94 [79]. Wells Fargo argues that the Andersons' statement is unsubstantiated and impermissibly alleges an ultimate or conclusory fact. Wells Fargo further argues that the Andersons do not explain how Wells Fargo's actions resulted in a higher interest rate or how the Andersons are qualified to opine on this issue. But the Andersons' statement is sufficiently substantiated by their declarations and is not an impermissible allegation of an ultimate or conclusory fact. The Andersons need not explain how Wells Fargo's actions resulted in a higher interest rate for purposes of stating that they incurred damages due to an increased interest rate and monthly payments. And Wells Fargo does not explain why the Andersons require special

qualifications to state that they paid higher interest rates and monthly payments.  The Court thus overrules Wells Fargo's objection.

***2. The Court Overrules Wells Fargo's Objections to the Andersons' Third-Party Documents.*** – Wells Fargo also objects to a number of third-party documents on which the Andersons rely, including credit reports and letters from financial institutions regarding the Andersons' credit scores and the status of the Loan.  Each objection is based on Wells Fargo's argument that, to the extent the documents are offered to demonstrate that Wells Fargo inaccurately reported the Loan as delinquent, they are inadmissible hearsay.  But the Andersons may permissibly offer the documents for purposes other than proving that Wells Fargo inaccurately reported the status of the Loan.  The Court thus overrules Wells Fargo's objections.

The Court also overrules Wells Fargo's remaining boilerplate objections to Exhibits 13–15 to the Andersons' counsel's declaration, including the expert report (the "Report") authored by Tarter, the Andersons' expert witness.  Pls.' App. 745, 813, 815 [79].  Wells Fargo offers no meaningful argument regarding the documents beyond asserting in conclusory fashion that the documents are unauthenticated and/or inadmissible hearsay.  The Court thus overrules Wells Fargo's objections.

### C. The Court Denies Summary Judgment on the Andersons' Claim for Violation of the Bankruptcy Discharge Injunction

Wells Fargo first moves for summary judgment on the Andersons' bankruptcy discharge injunction claim.  The Andersons assert that Wells Fargo violated the bankruptcy discharge injunction in 11 U.S.C. § 524(i) by (1) failing to apply the Andersons' payments

properly to the Loan and (2) reporting inaccurate information to the CRAs regarding the status of the Loan. Section 524(i) states:

> The willful failure of a creditor to credit payments received under a plan confirmed under this title, unless the order confirming the plan is revoked, the plan is in default, or the creditor has not received payments required to be made under the plan in the manner required by the plan (including crediting the amounts required under the plan), shall constitute a violation of an injunction under subsection (a)(2) if the act of the creditor to collect and failure to credit payments in the manner required by the plan caused material injury to the debtor.

11 U.S.C. § 524(i).

Wells Fargo asserts that the Loan was not discharged through Mr. Anderson's bankruptcy and thus is not subject to the discharge injunction. But "if § 524(i) applied only to discharged debts, the provision would be superfluous; a failure to credit plan payments on discharged debts would violate the discharge injunction regardless of whether § 524(i) were enacted." *In re Pompa*, 2012 WL 2571156, at *8 (Bankr. S.D. Tex. June 29, 2012) (holding that section 524(i) applies to any willful "failure to credit payments on debts not discharged under the plan."). Because Wells Fargo has not shown as a matter of law that the Loan is not subject to the discharge injunction in section 524(i), the Court denies Wells Fargo's motion for summary judgment on the Andersons' section 524(i) claim.[2]

---

[2] Wells Fargo also contends for the first time in its reply that section 524(i) does not apply because the Andersons' mortgage payments were "outside the plan." Reply in Supp. of Mot. for Sum. J. ("Reply") 11 [92]. The Court declines to consider arguments raised for the first time in a reply. *Hermitage Ins. Co. v. Times Square Dallas, Ltd.*, No. 3:05-CV-0785-N, 2006 WL 8437468, at *3 (N.D. Tex. Mar. 1, 2006).

***D. The Court Grants in Part and Denies in Part***
***Summary Judgment on the Andersons' FCRA Claims***

Wells Fargo next moves for summary judgment on the Andersons' FCRA claims. The Court grants in part and denies in part Wells Fargo's motion.

*1. The Court Grants Summary Judgment on the Andersons' Claim Under 15 U.S.C. § 1681s-2(a).* – Wells Fargo first moves for summary judgment on the Andersons' claim under FCRA section 1681s-2(a). Wells Fargo argues – and the Andersons concede – that no private right of action exists under section 1681s-2(a). *See Smith v. Nat'l City Mortg.*, No. A-09-CV-881-LY, 2010 WL 3338537, at *14 (W.D. Tex. Aug. 23, 2010) ("there is no private cause of action under § 1681s-2(a)." (citing *Davis v. Sallie Mae, Inc.*, 2009 WL 2525303 (N.D. Tex. Aug. 18, 2009))). Thus, to the extent the Andersons assert a claim for violation of section 1681s-2(a), the Court grants summary judgment on that claim.

*2. The Court Denies Summary Judgment on the Andersons' Claim Under 15 U.S.C. § 1681s-2(b).* – Wells Fargo next moves for summary judgment on the Andersons' claim under FCRA section 1681s-2(b). Section 1681s-2(b) provides in pertinent part:

> (1) In general. After receiving notice pursuant to section 1681i(a)(2) of this title of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall –
>
> (A) conduct an investigation with respect to the disputed information;
>
> . . .
>
> (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the

person furnished the information and that compile and maintain files on consumers on a nationwide basis; and

(E) if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1), for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the reinvestigation promptly –

(i) modify that item of information;
(ii) delete that item of information; or
(iii) permanently block the reporting of that item of information.

15 U.S.C. § 1681s-2(b).

While the FCRA does not explicitly set forth the level of investigation that section 1681s-2(b) requires, numerous courts in this and other circuits have concluded that a furnisher must conduct a "reasonable" investigation with respect to the disputed information. *See, e.g.*, *Shaunfield v. MB Fin. Bank, N.A.*, No. 3:15-CV-0856-L, 2016 WL 631928, at *3 (N.D. Tex. Feb. 17, 2016); *see also Robertson v. J.C. Penney Co., Inc.*, No. 2:06-CV-3KS-MTP, 2008 WL 623397, at *8 (S.D. Miss. Mar. 4, 2008) (collecting cases from the Third, Fourth, and Seventh Circuits and concluding that a furnisher's "requirement to conduct a reasonable investigation to determine whether disputed information in a consumer credit report can be verified is widely recognized."). "A reasonable investigation 'clearly requires some degree of careful inquiry by creditors' and more than just a 'superficial' inquiry." *Shaunfield*, 2016 WL 631928, at *3 (quoting *Robertson*, 2008 WL 623397, at *8). "The reasonableness of an investigation under the FCRA is generally a question of fact for the jury." *Shaunfield*, 2016 WL 631928, at *3 (citing *Cousin v. Trans Union Corp.*, 246 F.3d 359, 368–69 (5th Cir. 2001)).

Here, the Andersons assert that Wells Fargo received notice of their Loan dispute on October 5, 2015. The Andersons also offer evidence showing that Wells Fargo received automated credit dispute verifications ("ACDVs") from at least one CRA regarding the Andersons' dispute. The Andersons further point to evidence that Wells Fargo responded to ACDVs from Experian on October 19, 2015 and from TransUnion on October 21, 2015. They argue that Wells Fargo continued to report inaccurate information about the Andersons' payment history on the Loan in response to these ACDVs.

In response, Wells Fargo argues that by November 25, 2015, it had investigated the Andersons' dispute, corrected its credit reporting, and notified the CRAs of its investigation results by requesting updates to its credit reporting. Wells Fargo thus argues that it satisfied its FCRA obligations such that the Andersons' FCRA claim fails as a matter of law.

The Court is not persuaded. The parties do not dispute that the Andersons made timely payments on the Loan and that Wells Fargo inaccurately reported the Loan as delinquent despite the availability of information showing that the opposite was true. Whether Wells Fargo's investigation of the Andersons' dispute was reasonable is a question for the jury. *See Shaunfield*, 2016 WL 631928, at *3. Viewing the evidence in the light most favorable to the Andersons, the Court concludes that sufficient evidence exists to create a genuine issue of material fact regarding whether Wells Fargo satisfied its obligations under the FCRA.

Wells Fargo next asserts that summary judgment on the Andersons' FCRA section 1681s-2(b) claim is proper because the Andersons have failed to show that they

suffered damages in connection with their claim. The FCRA permits "recovery for humiliation and mental distress and for injury to one's reputation and creditworthiness." *Bacharach v. Suntrust Mortg., Inc.*, 827 F.3d 432, 435–36 (5th Cir. 2016) (quoting *Sapia v. Regency Motors of Metairie, Inc.*, 276 F.3d 747, 753 (5th Cir. 2002)) (rejecting plaintiff's testimony that she was a "complete wreck" and that, while unable to recall exactly, she had seen a number of medical professionals due to her "anxiety and stress"). A consumer is not required to show "but for causation," but rather that the violations were a "substantial factor" in causing the damages. *Comeaux v. Experian Info. Sols.*, No. CIV.A.2:02-CV-0304, 2004 WL 1354412, at *9 (E.D. Tex. June 8, 2004); *Jett v. Experian Info. Sols., Inc.*, No. 3:12-CV-2136-D, 2014 WL 2587613, at *10 (N.D. Tex. June 10, 2014), *aff'd in part, vacated in part sub nom. Jett v. American Home Mortg. Servicing, Inc.*, 614 F. App'x 711 (5th Cir. 2015). "However, a claim related to emotional distress requires a 'degree of specificity' and 'must be supported by evidence of genuine injury,' such as 'the observations of others,' 'corroborating testimony,' or 'medical or psychological evidence.'" *Bacharach*, 827 F.3d at 436 (quoting *Cousin*, 246 F.3d at 371); *see also Vadie v. Miss. State Univ.*, 218 F.3d 365, 376 (5th Cir. 2000) (noting that to prove emotional distress, a plaintiff must show a "specific discernable injury to the [plaintiff's] emotional state, proven with evidence regarding the nature and extent of the harm" (citation omitted)).

The Andersons argue that Wells Fargo's alleged FCRA violations damaged them by (1) putting Mr. Anderson's top secret security clearance – and thus his employment with the United States Navy – at risk; (2) causing the Andersons to incur out-of-pocket expenses in

the form of credit report charges and postage, mileage to and from their attorneys' offices, and a higher interest rate and monthly payments upon being approved for credit to purchase a vehicle; (3) causing Mr. Anderson emotional distress in the form of stress, anxiety, insomnia treated with Nortriptyline and/or Ambien, and cluster headaches treated with Zomig and/or oxygen therapy;[3] and (4) causing Hanna J. Anderson ("Mrs. Anderson") emotional distress in the form of stress, anxiety, and sleeping difficulties, and the use of over-the-counter medications such as NyQuil for assistance with sleeping.

Wells Fargo challenges Mr. Anderson's testimony that he feared losing his top secret security clearance, pointing to a deposition excerpt in which Mr. Anderson appears to assert that he was not afraid of losing his security clearance after 18 months of dealing with the credit reporting issues, and was not afraid of losing his clearance as of his March 23, 2018 deposition. *See* Reply 5–6 [92].[4] But Mr. Anderson's deposition testimony does not show that he did not fear losing his security clearance – and thus his job – at *any* point throughout the Andersons' dispute with Wells Fargo. It simply shows that Mr. Anderson did not fear losing his clearance at certain points in the dispute. This is particularly true given Mr. Anderson's assertion that his financial stability is subject to continuous evaluation as part of

---

[3] Mr. Anderson also asserts that his emotional distress resulted in an inguinal hernia treated with surgical repair. But in the absence of medical evidence showing that Mr. Anderson's emotional distress caused the hernia, the Court declines to accept Mr. Anderson's injury as evidence of emotional distress.

[4] Wells Fargo moves for leave to file an appendix in support of its summary judgment reply containing the challenged deposition testimony [93]. The Court grants Wells Fargo's motion.

his employment, so his concerns about security clearance might increase or decrease at any given point in time. The Court thus rejects Wells Fargo's challenge to Mr. Anderson's testimony.

The Andersons also offer evidence of out-of-pocket expenses in the form of credit report charges and postage, along with mileage to and from their attorneys' offices, in their efforts to dispute and resolve the credit reporting issues underlying this action. This evidence is sufficient to survive summary judgment on the issue of FCRA damages.

The Andersons' evidence of emotional distress is also sufficient to create a fact issue precluding summary judgment. The Andersons offer specific testimony regarding the mental, emotional, and physical effects they experienced as a result of Wells Fargo's alleged actions. Their testimony is notably more detailed and specific than the generalized testimony that the Fifth Circuit has previously rejected. *See Cousin*, 246 F.3d at 371 (rejecting plaintiff's testimony that he felt "[v]ery upset, angry," "trapped," and "like nobody was listening.") and *Bacharach*, 827 F.3d at 435–36 (rejecting plaintiff's testimony that she was a "complete wreck" and that, while unable to recall exactly, she had seen multiple medical professionals due to her "anxiety and stress").

However, the Andersons' testimony about higher interest rates and monthly payments incurred upon their approval to purchase a vehicle is unavailing for FCRA purposes. The Andersons were approved to purchase a vehicle on May 5, 2015, and Wells Fargo's obligations under the FCRA were not triggered until October 5, 2015. The Andersons thus cannot show that Wells Fargo's alleged FCRA violations were a "substantial factor" in

causing any alleged damages that occurred before Wells Fargo's FCRA obligations were triggered. *See Comeaux*, 2004 WL 1354412, at *9.

Viewing the facts in the light most favorable to the Andersons, the Court holds that they have adduced sufficient summary judgment evidence in the form of employment risk, out-of-pocket costs, and emotional distress to survive summary judgment. The Court thus denies Wells Fargo's motion for summary judgment on the Andersons' section 1681s-2(b) claim.

*3. The Court Grants Summary Judgment on the Andersons' Claim for Punitive Damages.* – To collect punitive damages under the FCRA, the Andersons must show that Wells Fargo "willfully failed to comply with one of the Act's requirements." *Sapia*, 276 F.3d at 753. "For the violation to be 'willful,'a defendant's course of conduct must exhibit a 'conscious disregard' for or entail 'deliberate and purposeful' actions taken against a plaintiff's rights." *Id.* (quoting *Cousin*, 246 F.3d at 372). "Generally, courts have allowed a willful noncompliance claim to proceed where a defendant's conduct involves willful misrepresentations or concealments." *Cousin*, 246 F.3d at 372 (citing *Pinner v. Schmidt*, 805 F.2d 1258, 1263 (5th Cir.1986)). "In those cases, a consumer reporting agency has typically misrepresented or concealed some or all of a credit report from a consumer." *Cousin*, 246 F.3d at 372 (citing *Pinner*, 805 F.2d at 1263).

Wells Fargo asserts that the Andersons have produced no evidence that Wells Fargo willfully failed to comply with the FCRA. Wells Fargo states that it acknowledged receipt of the Andersons' counsel's dispute letter dated October 5, 2015; acknowledged a credit

reporting error on November 23, 2015; and informed the Andersons' counsel that it had updated its credit reporting by a letter dated December 4, 2015. Wells Fargo asserts that it made that correction less than two months after learning of the Andersons' credit dispute.

The Court agrees. While it is not clear as a matter of law that Wells Fargo's conduct was reasonable, the Andersons have not adduced evidence that Wells Fargo "knowingly and intentionally committed an act in conscious disregard for the rights of others." *See Cousin*, 246 F.3d at 372 (citing *Pinner*, 805 F.2d at 1263). The Court thus grants summary judgment on the Andersons' claim for punitive damages under the FCRA.

### E. The Court Denies Summary Judgment on the Andersons' RESPA Claim

Wells Fargo next moves for summary judgment on the Andersons' RESPA claim. The Court denies Wells Fargo's motion.

### 1. Wells Fargo Has Not Shown as a Matter of Law That Its Responses to the Andersons' Correspondence Complied with RESPA. –

RESPA requires a servicer of federally related mortgage loans to respond to any "qualified written request from the borrower (or an agent of the borrower) for information relating to the servicing of such loan." 12 U.S.C. § 2605(e)(1)(A). Section 2605(e) sets forth a list of additional obligations for loan servicers who receive such inquiries:

> (2) Not later than 30 days (excluding legal public holidays, Saturdays, and Sundays) after the receipt from any borrower of any qualified written request . . . and, if applicable, before taking any action with respect to the inquiry of the borrower, the servicer shall –
>
> (A) make appropriate corrections in the account of the borrower, including the crediting of any late charges or penalties, and transmit to the borrower a written notification of such correction . . .

(B) after conducting an investigation, provide the borrower with a written explanation or clarification that includes –

    (i) to the extent applicable, a statement of the reasons for which the servicer believes the account of the borrower is correct as determined by the servicer; and

    . . .

(C) after conducting an investigation, provide the borrower with a written explanation or clarification that includes –

    (i) information requested by the borrower or an explanation of why the information requested is unavailable or cannot be obtained by the servicer;

    . . .

(3) Protection of credit rating

During the 60-day period beginning on the date of the servicer's receipt from any borrower of a qualified written request relating to a dispute regarding the borrower's payments, a servicer may not provide information regarding any overdue payment, owed by such borrower and relating to such period or qualified written request, to any consumer reporting agency . . . .

12 U.S.C. § 2605(e).  RESPA section 2605(k)(1) also includes a number of prohibitions for

loan  servicers:

A servicer of a federally related mortgage shall not –

. . .

(C) fail to take timely action to respond to a borrower's requests to correct errors relating to allocation of payments, final balances for purposes of paying off the loan, or avoiding foreclosure, or other standard servicer's duties;

(D) fail to respond within 10 business days to a request from a borrower to provide the identity, address, and other relevant contact information about the owner or assignee of the loan; or

(E) fail to comply with any other obligation found by the Bureau of Consumer Financial Protection, by regulation, to be appropriate to carry out the consumer protection purposes of this chapter.

12 U.S.C. § 2605(k)(1).

The Andersons sent Wells Fargo no fewer than five qualified written requests ("QWRs") regarding Wells Fargo's application of their Loan payments and credit reporting relating to the Loan payments.[5] They argue that Wells Fargo violated RESPA sections 2605(e) and (k) by failing to provide timely and sufficient responses to each of the QWRs. Wells Fargo argues in turn that summary judgment is proper because it complied with its RESPA obligations by timely responding to each of the Andersons' QWRs regarding the application of Loan payments and responding to each of the Andersons' QWRs regarding Wells Fargo's credit reporting.[6] The Court is not persuaded.

First, genuine issues of material fact exist regarding the Andersons' section 2605(e) claims. The Andersons have offered a detailed overview of their QWRs and Wells Fargo's responses that creates genuine fact issues regarding whether Wells Fargo provided timely, sufficient responses to each of the QWRs. *See* Resp. to Mot. for Sum. J. ("Response") 22–27 [94-2]. For example, it appears that Wells Fargo did not correct the Andersons' Loan account information within thirty business days of the Andersons' October 5, 2015 QWR to reflect that the Andersons were not in default on their Loan

---

[5] The Andersons sent the QWRs to Wells Fargo on (1) July 28, 2015; (2) October 5, 2015; (3) December 22, 2015; (4) January 14, 2016; and (5) February 12, 2016, respectively.

[6] The Court notes that Wells Fargo does not assert that it *timely* responded to the Andersons' credit reporting QWRs.

payments. Nor can the Court say as a matter of law that Wells Fargo's responses were all sufficient under section 2605(e): the Andersons note numerous required items of information that Wells Fargo's QWR responses omitted. It also appears that Wells Fargo provided information to CRAs regarding overdue Loan payments during the 60-day period beginning on the date Wells Fargo received the October 5, 2015 QWR, in violation of section 2605(e)(3).

Second, genuine fact issues also exist regarding the Andersons' section 2605(k) claims. As an initial matter, the Court rejects Wells Fargo's argument that the Andersons failed to assert any section 2605(k) claims in their complaint. The Andersons' second amended petition states:

> 157. Wells Fargo failed to provide [the Andersons] with meaningful investigation and responses to each of [their] Requests for Information and Notices of Error and further failed to provide all of the information requested in each letter, particularly with regard to [the Andersons'] requests to correct credit reporting related to their mortgage loan, to provide reasons why Wells Fargo improperly withheld funds as unapplied, and to provide servicing notes related to [the Andersons'] loan.

> 158. Wells Fargo's failure to respond appropriately to [the Andersons'] Requests for Information and Notices of Error violates 12 U.S.C. § 2605.

Second Am. Pet. ¶¶ 157–58 [32]. The Andersons' allegations were sufficient to put Wells Fargo on notice of the Andersons' claims that Wells Fargo violated section 2605(k) by failing to (1) reapply the Andersons' monthly Loan payments as of the dates on which Wells Fargo received them, and (2) respond to the Andersons' requests for information regarding the identity, address, and other relevant contact information about the owner of the Loan in a timely manner. And, as stated above, genuine fact issues preclude summary judgment

regarding whether Wells Fargo timely reapplied the Andersons' monthly Loan payments and sufficiently responded to the Andersons' QWRs.

***2. Genuine Issues of Material Fact Exist Regarding Whether the Andersons Suffered Damages in Connection with their RESPA Claims.*** – Wells Fargo next argues that summary judgment on the Andersons' RESPA claims is proper because the Andersons did not suffer actual damages in connection with their claims. In actions brought by individuals – including the instant case – RESPA provides that a servicer who fails to comply with section 2605 shall be liable for an amount equal to the sum of:

> (A) any actual damages to the borrower as a result of the failure; and

> (B) any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of this section, in an amount not to exceed $2,000.

12 U.S.C. § 2605(f)(1). Thus, "to state a claim for a RESPA violation in connection with a [QWR], a plaintiff must allege actual damages *resulting from a violation of § 2605*." *Steele v. Quantum Servicing Corp.*, No. 3:12-CV-2897-L, 2013 WL 3196544, at *6 (N.D. Tex. June 25, 2013) (emphasis and alteration in original). Attorneys' fees and litigation expenses cannot satisfy the actual damages requirement of a RESPA claim. *See Whittier v. Ocwen Loan Servicing, L.L.C.*, 594 Fed. App'x 833, 836–37 (5th Cir. 2014) (agreeing with *Steele* that attorneys' fees and litigation expenses "cannot, as a matter of law, satisfy the actual damages requirement of a RESPA claim." (citing *Steele*, 2013 WL 3196544)).

The Andersons assert that they sustained RESPA damages consisting of credit report charges, postage, mileage to and from their attorneys' offices, credit damage, lost business

opportunity, emotional distress, and attorneys' fees and costs separate and apart from fees incurred since they filed their action as a result of Wells Fargo's RESPA violations.

Courts in this circuit are split on whether emotional damages are recoverable under RESPA. *Compare Geoffrion v. Nationstar Mortg. LLC*, 182 F. Supp. 3d 648, 664 (E.D. Tex. 2016) and *Madrid v. Wells Fargo Bank, N.A.*, No. EP-14-CV-00152-DCC, 2017 WL 5653906, at *7 (W.D. Tex. Mar. 17, 2017) (holding that mental anguish damages are permitted under RESPA) *with Steele*, 2013 WL 3196544, at *7–8, and *Trahan v. GMAC Mortg. Corp.*, No. EP-05-CA-0017-FM, 2006 WL 5249733, at *8 (W.D. Tex. July 21, 2006) (denying recovery of emotional distress damages under RESPA). But "[o]f the circuits that have addressed the issue, two have indicated that emotional distress damages should be allowed, while no circuit appears to have ruled that emotional damages are not allowed." *Geoffrion*, 182 F. Supp. 3d at 663 (citing *Houston v. U.S. Bank Home Mortg. Wisconsin Servicing*, 505 Fed. App'x 543, 548, 548 n.6 (6th Cir. 2012) and *Catalan v. GMAC Mortg. Corp.*, 629 F.3d 676, 696 (7th Cir. 2011)).[7] In *Houston*, the Sixth Circuit stated that it found "nothing in the text of § 2605(f), or in RESPA more broadly, to preclude 'actual damages' from including emotional damages, provided that they are adequately proven." 505 Fed. App'x at 548 (holding that genuine issue of material fact existed regarding whether defendant caused plaintiff to suffer emotional damages under RESPA where plaintiff averred that she

---

[7] Both the Tenth and Eleventh Circuits have also assumed without deciding that emotional distress damages are available under RESPA. *See Baez v. Specialized Loan Servicing, LLC*, 709 Fed. App'x 979, 982 (11th Cir. 2017) (noting that RESPA is a remedial consumer protection statute and construing "'actual damages' broadly"); *see also Ogden v. PNC Bank*, 599 Fed. App'x 331, 332 n.1 (10th Cir. 2015).

experienced "stress, mental anguish, embarrassment, and humiliation."). And in *Catalan*, the Seventh Circuit noted the defendant's concession that emotional distress damages qualify as actual RESPA damages and rejected the defendant's argument that the plaintiffs' emotional damages evidence – consisting of medical records and the plaintiffs' own testimony – was insufficient to survive summary judgment. 629 F.3d at 696.

The Court now holds that emotional damages are recoverable under RESPA. As an initial matter, the Court agrees that RESPA is a remedial consumer protection statute. *See Geoffrion*, 182 F. Supp. 3d at 664 (collecting cases and determining that RESPA is a remedial consumer protection statute). And "courts construe remedial consumer-protection statutes 'liberally in order to best serve Congress' intent.'" *Id.* at 665 (quoting *Rawlings v. Dovenmuehle Mortg., Inc.*, 64 F. Supp. 2d 1156, 1165 (M.D. Ala. 1999)). Thus, construing RESPA's damages provision broadly, the Court holds that emotional distress damages are available under the statute.

The Court also holds that the Andersons have produced sufficient evidence of emotional distress to survive summary judgment. The actual damages portion of RESPA can be interpreted in a manner similar to the Fair Debt Collection Practices Act ("FDCPA"). *Geoffrion*, 182 F. Supp. 3d at 666 n.8 (citing *McLean v. GMAC Mortg. Corp.*, 595 F. Supp. 2d 1360, 1370 (S.D. Fla. 2009), *aff'd*, 398 Fed. App'x 467 (11th Cir. 2010)). The Andersons may therefore establish emotional damages under RESPA via their own testimony. *Geoffrion*, 182 F. Supp. 3d at 666 n.8 (citations omitted) (rejecting defendant's argument that plaintiffs could not recover mental anguish damages due to lack of expert

testimony or health record evidence); *see also Guajardo v. GC Servs., LP*, 498 Fed. App'x 379, 385 (5th Cir. 2012) (finding sufficient evidence to support award of damages for mental anguish and emotional distress under FDCPA even where jury heard contradictory proof from plaintiff). Here, Mr. Anderson asserts that he experienced emotional distress in the form of stress, anxiety, insomnia treated with Nortriptyline and/or Ambien, and cluster headaches treated with Zomig and/or oxygen therapy. Mrs. Anderson in turn asserts that she experienced stress, anxiety, and sleeping difficulties and that she used over-the-counter medications such as NyQuil to help her sleep. Viewing the evidence in the light most favorable to the Andersons, the Court concludes that they have adduced sufficient evidence of emotional distress damages to survive Wells Fargo's summary judgment motion.

The Andersons have sufficiently set forth evidence of damages – namely, credit report charges, postage, emotional distress, and attorneys' fees and costs associated with disputing Wells Fargo's actions before the commencement of litigation – that they incurred as a result of Wells Fargo's actions. Genuine fact issues exist regarding the extent of these damages and whether the Andersons incurred some or all of them in connection with Wells Fargo's purported RESPA violations. The Court thus denies Wells Fargo's summary judgment motion with respect to the Andersons' RESPA claim.

The Andersons also argue that Wells Fargo demonstrated a pattern or practice of noncompliance with RESPA that warrants an award of statutory damages. *See* 12 U.S.C. § 2605(f)(1)(B). "Because § 2605(f)(1)(B) does not specify what constitutes a 'pattern or practice of noncompliance' with RESPA, courts have interpreted the phrase in accordance

with the usual meaning of the words to mean 'a standard or routine way of operating.'" *Obazee v. Bank of N.Y. Mellon*, No. 3:15-CV-1082-D, 2015 WL 8479677, at *3 (N.D. Tex. Dec. 10, 2015) (citing *McLean*, 595 F. Supp. 2d at 1365); *see also Ploog v. HomeSide Lending, Inc.*, 209 F. Supp. 2d 863, 869 (N.D. Ill. 2002) (holding that failure to respond to QWRs on five occasions was sufficient to establish a pattern or practice). Based on the summary judgment record, the Court cannot say as a matter of law that Wells Fargo has not demonstrated a pattern or practice of RESPA noncompliance.

Viewing the facts in the light most favorable to the Andersons, the Court holds that genuine issues of material fact exist with regard to the Andersons' RESPA claim. The Court thus denies Wells Fargo's motion for summary judgment with respect to that claim.

### F. The Court Grants Summary Judgment on the Andersons' TILA Claim

Wells Fargo next moves for summary judgment on the Andersons' TILA claim. The Court grants Wells Fargo's motion.

The Andersons assert that Wells Fargo's failure to timely and/or properly credit their Loan payments as of the date Wells Fargo received the payments violated TILA. Under TILA:

> In connection with a consumer credit transaction secured by a consumer's principal dwelling, no servicer shall fail to credit a payment to the consumer's loan account as of the date of receipt, except when a delay in crediting does not result in . . . the reporting of negative information to a consumer reporting agency . . . .

15 U.S.C. § 1639f(a); *see also* 12 C.F.R. § 1026.36(c)(1)(i) (setting forth similar requirements for servicers applying "periodic payments" to consumer loan accounts). The

Andersons' TILA claims are subject to a one-year statute of limitations.  15 U.S.C.

§ 1640(e); *Lowe v. Wells Fargo Bank, N.A.*, No. 3:17-CV-564, 2017 WL 4685529, at *2

(E.D. Va. Oct. 18, 2017).

As an initial matter, Wells Fargo is not subject to TILA liability in its capacity as a

loan servicer.  *Lucien v. Fed. Nat'l Mortgage Ass'n*, 21 F. Supp. 3d 1379, 1383 (S.D. Fla.

2014) ("[c]ourts applying TILA uniformly hold that there is no servicer liability under

TILA.").  Nor is Wells Fargo liable under TILA as a creditor.  TILA states that:

> The term "creditor" refers only to a person who both (1) regularly extends,
> whether in connection with loans, sales of property or services, or otherwise,
> consumer credit which is payable by agreement in more than four installments
> or for which the payment of a finance charge is or may be required, and (2) *is
> the person to whom the debt arising from the consumer credit transaction is
> initially payable on the face of the evidence of indebtedness* or, if there is no
> such evidence of indebtedness, by agreement . . . .

15 U.S.C. § 1602(g) (emphasis added).  Wells Fargo is not a "creditor" as defined in TILA

because it is not the originating lender and the Note was not initially payable to it.  Because

Wells Fargo is not subject to TILA liability as a servicer or creditor of the Loan, the Court

grants Wells Fargo's motion for summary judgment on the Andersons' TILA claim.

### G. The Court Grants Summary Judgment on the Andersons' TDCA Claims

Wells Fargo next moves for summary judgment on the Andersons' TDCA claims.

The Court grants the motion.

### 1. The FCRA Preempts the Andersons' TDCA Section 392.301(a)(3) Claim. – The

FCRA preempts the Andersons' TDCA section 392.301(a)(3) claim based on allegations of

inaccurate credit reporting.  *Thelander v. Equifax Info. Servs. LLC*, No. 3:14-CV-2650-P,

2014 WL 12596971, at *5 (N.D. Tex. Dec. 18, 2014) (holding that FCRA preempted TDCA claim based on inaccurate credit reporting); *see also Ayers v. Aurora Loan Servs.*, LLC, 787 F. Supp. 2d 451, 457 (E.D. Tex. 2011) (holding that FCRA preempted TDCA claim based on allegations that defendant reported inaccurate information to credit reporting agency). Indeed, the Andersons concede that the FCRA preempts their claim. The Court thus grants summary judgment on the Andersons' claim under TDCA section 392.301(a)(3).

**2. *Wells Fargo Made No "Misrepresentations" for Purposes of the Andersons' Claims Under TDCA Sections 392.304(a)(8) and (19).* –** Under TDCA section 392.304(a)(8), "in debt collection or obtaining information concerning a consumer, a debt collector may not use a fraudulent, deceptive, or misleading representation that . . . misrepresent[s] the character, extent, or amount of a consumer debt . . . ." TEX. FIN. CODE ANN. § 392.304(a). TDCA section 392.304(a)(19) in turn prohibits debt collectors from "using any other false representation or deceptive means to collect a debt or obtain information concerning a consumer." *Id.*

"For a statement to constitute a misrepresentation under the TDCA, Defendants must have made a false or misleading assertion." *Bibolotti v. Am. Home Mortg. Servicing, Inc.*, No. 4:11-CV-472, 2013 WL 2147949, at *17 (E.D. Tex. May 15, 2013) (citing *Reynolds v. Sw. Bell Tel., L.P.*, No. 2-05-356-CV, 2006 WL 1791606, at *7 (Tex. App. – Ft. Worth June 29, 2006, pet. denied). Whether a statement is false or misleading depends on the context in which it was made. *See Bibolotti*, 2013 WL 2147949, at *9.

Here, Wells Fargo argues that the mortgage statements did not misrepresent the status

of the Loan: they accurately stated exactly what Wells Fargo had done with the Andersons'
payments. The Court agrees. While Wells Fargo may have incorrectly placed the
Andersons' Loan payments into an unapplied funds account – and thus erroneously reported
that the Loan was in default – Wells Fargo did not misrepresent what it had done with the
payments. Because Wells Fargo made no actionable misrepresentations for TDCA purposes,
the Court grants Wells Fargo's motion for summary judgment on the Andersons' claims
under TDCA sections 392.304(a)(8) and (19).

### H. The Court Denies Summary Judgment on the Andersons' Defamation Claim

Wells Fargo next moves for summary judgment on the Andersons' defamation claim.
The Court denies Wells Fargo's motion.

"The FCRA preempts state law defamation claims unless the plaintiff consumer
proves that the defendant acted with 'malice or willful intent to injure' him." *Robinson v.
EMC Mortg. Corp.*, No. 3:10-CV-2140-L, 2013 WL 1245863, at *12 (N.D. Tex. Mar. 26,
2013) (quoting *Young v. Equifax Credit Info. Servs., Inc.*, 294 F.3d 631, 639 (5th Cir. 2002));
*see also* 15 U.S.C. § 1681h(e). A person who furnishes information to a credit reporting
agency does so "with malice" if it reports information it knows to be false or if it reports
information despite entertaining serious doubts as to the truth of the information. *See Morris
v. Equifax Info. Servs., LLC*, 457 F.3d 460, 470–71 (5th Cir. 2006), *as modified on reh'g*
(Aug. 17, 2006). Thus, to avoid FCRA preemption, a plaintiff must demonstrate that "the
defendant made the statements to a credit reporting agency 'knowing the statements were
false or with a reckless disregard of whether they were false.'" *O'Dea v. Wells Fargo Home*

*Mortg.*, No. H-10-4755, 2013 WL 441461, at *12 (S.D. Tex. Feb. 5, 2013) (quoting *Morris*, 457 F.3d at 471; citing *Meisel v. USA Shade and Fabric Structures Inc.*, 795 F. Supp. 2d 481, 488 (N.D. Tex. 2011)).

The Andersons assert that Mr. Anderson called Wells Fargo in May of 2015 to apprise it of its inaccurate Loan reporting, and that their attorney again notified Wells Fargo of its erroneous accounting in July 2015. Yet Wells Fargo continued to report inaccurate information to CRAs for months despite being notified that the information was incorrect. Wells Fargo has not demonstrated as a matter of law that it did not make statements to CRAs "with a reckless disregard of whether they were false," *O'Dea*, 2013 WL 441461, at *12 (internal quotation marks omitted), and thus has not shown that the FCRA as a matter of law preempts the Andersons' defamation claim. The Court thus denies summary judgment on the Andersons' defamation claim.

## I. The Court Denies Summary Judgment on the Andersons' Breach of Contract Claim

Wells Fargo next moves for summary judgment on the Andersons' breach of contract claim. The Court denies the motion.

To prevail on a breach of contract claim under Texas law, the Andersons must show: "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of contract by the defendants; and (4) damages sustained by the plaintiff as a result of the breach." *Sport Supply Grp., Inc. v. Columbia Cas. Co.*, 335 F.3d 453, 465 (5th Cir. 2003) (citations omitted). "Generally, where no time of performance is stated in a contract, the law will imply a reasonable time." *Dallas City Limits Prop. Co., L.P. v. Austin*

*Jockey Club, Ltd.*, 376 S.W.3d 792, 800 (Tex. App. – Dallas 2012, pet. denied) (quoting *Moore v. Dilworth*, 179 S.W.2d 940, 942 (1944)).

The Andersons assert that Wells Fargo breached the payment application provisions of the Deed of Trust, which require Wells Fargo to "apply full payments to interest, then principal, then escrow items." Second Am. Pet. ¶ 190 [32]. The Andersons claim that Wells Fargo violated the provisions by placing the Loan payments in an unapplied funds account instead of applying them to the Loan in accordance with the provisions. The Andersons also note that the Deed of Trust specifically authorizes Wells Fargo to accept and apply partial payments or payments insufficient to bring the Loan current as unapplied funds, but does not authorize Wells Fargo to accept and apply full payments as unapplied funds.

Because the Deed of Trust does not specify a period of time within which Wells Fargo must apply full payments to the Loan, Texas law implies a reasonable time for performance. *See Dallas City Limits Prop. Co.*, 376 S.W.3d at 800. Wells Fargo held the Andersons' timely monthly Loan payments in unapplied funds from December 2014 through April 2015. On May 10, 2015, it notified the Andersons that it had applied their payments to the Loan as a single lump sum effective April 30, 2015. Whether Wells Fargo performed its obligation to apply the Loan payments within a reasonable time is a question for the jury that precludes summary judgment.

The Andersons have also produced sufficient evidence of damages to survive summary judgment. In particular, the Andersons point to out-of-pocket costs including credit report and postage fees, mileage to and from their attorneys' offices, and an increased interest

rate and payment amount on the car loan for which they received approval in May of 2015. The Court thus denies Wells Fargo's motion for summary judgment on the Andersons' breach of contract claim.

### J. The Court Denies Summary Judgment on the Andersons' Negligence and Gross Negligence Claims

Wells Fargo next moves for summary judgment on the Andersons' negligence and gross negligence claims. The Court denies the motion.

A party asserting a negligence claim under Texas law must show: (1) a legal duty owed by one party to another; (2) breach of that duty; and (3) damages proximately caused by the breach. *See Nabors Drilling, USA, Inc. v. Escoto*, 288 S.W.3d 401, 404 (Tex. 2009). A party asserting a gross negligence claim must prove the above negligence elements, and must also show that:

> (1) viewed objectively from the actor's standpoint, the act or omission complained of must involve an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and (2) the actor must have actual, subjective awareness of the risk involved, but nevertheless proceed in conscious indifference to the rights, safety, or welfare of others.

*Lee Lewis Constr., Inc. v. Harrison*, 70 S.W.3d 778, 785 (Tex. 2001). "Thus, 'duty' is the threshold question in connection with any negligence claim." *Pichardo v. Big Diamond, Inc.*, 215 S.W.3d 497, 501 (Tex. App. – Fort Worth 2007, no pet.).

"To impose a tort duty upon parties to a contract, the court must first find that a special relationship exists between them." *Farah v. Mafridge & Kormanik, P.C.*, 927 S.W.2d 663, 675 (Tex. App. – Houston [1st Dist.] 1996, no writ) (citations omitted); *see also Lombardi v. Bank of Am.*, No. 3:13-CV-1464-O, 2014 WL 988541, at *10 (N.D. Tex.

Mar. 13, 2014). Texas courts have found no special relationship between a mortgagor and mortgagee, or between a servicer and borrower, that imposes such a tort duty. *See Milton v. U.S. Bank Nat'l Ass'n*, 508 F. App'x 326, 329 (5th Cir. 2013) (rejecting plaintiff's negligence and gross negligence claims because "under Texas law, there is 'no special relationship between a mortgagor and mortgagee' that would give rise to a stand-alone duty of good faith and fair dealing." (internal quotation marks omitted)); *see also Siens v. Trian, LLC*, No. A-11-CV-075-AWA, 2014 WL 1900737, at *4 (W.D. Tex. May 13, 2014) ("Texas courts routinely hold there is no special relationship between a mortgagor and mortgagee that would impose an independent common law duty of good faith and fair dealing." (citations omitted)).

While there generally is no special relationship between a mortgagor and mortgagee or between a servicer and borrower, "[t]his district has held that even without a special relationship giving rise to a duty of care, there is always a duty to correct one's own prior false or misleading statement." *Hurd v. BAC Home Loans Servicing*, *LP*, 880 F. Supp. 2d 747, 763 (N.D. Tex. 2012) (citing *Nazareth Int'l, Inc. v. J.C. Penney Corp., Inc.*, 2005 WL 1704793, at *6 (N.D. Tex. July 19, 2005)). The Andersons assert that Wells Fargo breached this duty when it failed to correct its inaccurate credit reporting despite receiving ACDVs from the CRAs and communications from the Andersons and their counsel explaining how and why Wells Fargo's credit reporting was wrong. Whether Wells Fargo breached its duty to correct its own prior false or misleading statements regarding the Loan is a question of fact that precludes summary judgment.

The Court also rejects Wells Fargo's contention that the economic loss rule bars the Andersons' claims. The economic loss rule "generally precludes recovery in tort for economic losses resulting from the failure of a party to perform under a contract." *Hurd*, 880 F. Supp. 2d at 763 (quoting *Lamar Homes, Inc. v. Mid-Continent Cas. Co.*, 242 S.W.3d 1, 12 (Tex. 2007)). "In determining whether a tort claim is merely a repackaged breach of contract claim, a court must consider: 1) whether the claim is for breach of duty created by contract, as opposed to a duty imposed by law; and 2) whether the injury is only the economic loss to the subject of the contract itself." *Stanley Indus. of S. Fla. v. J.C. Penney Co., Inc.*, 2006 WL 2432309, at *5 (N.D. Tex. Aug. 18, 2006) (citing *Formosa Plastics Corp. USA v. Presidio Eng'rs and Contractors, Inc.*, 960 S.W.2d 41, 45–47 (Tex. 1998)).

Here, the Andersons assert that Wells Fargo breached its duty to correct its own prior false or misleading statements. *See Hurd*, 880 F. Supp. 2d at 763. Such a duty arises from law, not any contract. And the Andersons have asserted that Wells Fargo's alleged negligence and gross negligence caused them damages beyond any damage to the subject of the Deed of Trust itself. In particular, the Andersons assert that Wells Fargo (1) put Mr. Anderson's top secret security clearance – and thus his employment – at risk; and (2) caused the Andersons to incur out-of-pocket expenses consisting of credit report charges and postage, mileage to and from their attorneys' offices, and a higher interest rate and monthly payments upon their being approved for credit to purchase a vehicle. The Court thus holds that the economic loss rule does not bar the Andersons' negligence and gross negligence

claims.

### III. THE COURT DENIES THE ANDERSONS' MOTION FOR LEAVE TO FILE A SURREPLY

The Andersons move for leave to file a surreply in opposition to Wells Fargo's motion for summary judgment [96]. But because the Andersons have not demonstrated that leave to file a surreply is warranted, the Court denies the Andersons' motion.

### IV. THE COURT GRANTS IN PART AND DENIES IN PART WELLS FARGO'S MOTION TO STRIKE

Wells Fargo moves to strike the Andersons' expert designation of Tarter and objects to his proposed expert testimony [63].[8] The Court sustains in part and overrules in part the objections and grants in part and denies in part the motion.

Tarter is a purported expert in the banking, business, and consulting industries with over 40 years of industry experience. The Andersons have designated Tarter as their expert with respect to the following matters:

- Banking, mortgage lending, and loan servicing industry customs, standards, and practices related to the Andersons' claims;

- Whether Wells Fargo's actions with respect to the Andersons were commercially reasonable and in accordance with industry standards and practices;

- How Wells Fargo did or did not act consistently with safe and sound consumer

---

[8] In its reply in support of the motion to strike Tarter's expert designation and testimony, Wells Fargo moves for leave to supplement the record with excerpts from Tarter's deposition related to the alleged inaccuracies in Tarter's report. The Court grants Wells Fargo's motion.

mortgage lending and loan servicing practices;

- If Wells Fargo violated industry customs, whether Wells Fargo knew or should have known that such violations were likely to occur, and whether Wells Fargo should have acted to avert such violations;

- Whether there is evidence of any negligent and/or misleading practices by Wells Fargo;

- Whether it was foreseeable that Wells Fargo's actions would result in damage to the Andersons and, if so, how the Andersons were damaged; and

- The nature and extent of the Andersons' credit damages arising from Wells Fargo's actions.

Report 8–9, App. in Supp. of Mot. to Strike ("App.") 11–12 [64].

Wells Fargo moves to strike Tarter's expert designation and proposed testimony on the grounds that (1) Tarter is not qualified testify on the Andersons' damages; (2) Tarter's methodology is unreliable; (3) Tarter's testimony is irrelevant; and (4) Tarter's testimony contains improper legal conclusions [63].

### A. Legal Standard for Expert Testimony

Expert testimony is admissible if: (1) the expert is qualified; (2) the testimony is relevant to the lawsuit; and (3) the testimony is reliable. FED. R. EVID. 702; *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999). The Court has broad discretion in determining the admissibility of expert testimony, and the rejection of expert testimony is the exception, not the rule. *In re DePuy Orthopaedics, Inc. Pinnacle Hip Implant Prod. Liab. Litig.*, No.

3:11-MD-2244-K, 2016 WL 9560113, at *2–3 (N.D. Tex. Oct. 3, 2016) (citations omitted).

### B. Tarter is Not Qualified to Testify Regarding the *Andersons' Purported Medical or Psychological Damages*

Wells Fargo first asserts that Tarter is not qualified to testify regarding the Andersons' damages. Tarter's Report asserts that the Andersons sustained multiple forms of damage, many of which are medical or psychological, as a result of Wells Fargo's actions. *See, e.g.*, App. 42 [64] (stating that the Andersons' damages included loss of quality of life; sleeplessness and stress; mental anguish, frustration and upset; and sense of helplessness or loss of control). But Tarter concedes that he is "not a medical professional or psychologist." App. 44 [64]. And an expert may not "go beyond the scope of his expertise in giving his opinion." *Goodman v. Harris Cty.*, 571 F.3d 388, 399 (5th Cir. 2009) (citing *First United Fin. Corp. v. U.S. Fid. & Guar. Co.*, 96 F.3d 135, 136 (5th Cir. 1996)). Because Tarter is not qualified to testify regarding the Andersons' purported medical or psychological damages, the Court sustains Wells Fargo's objections and grants Wells Fargo's motion to strike Tarter's expert testimony with respect to those topics.

Tarter is, however, qualified to testify with respect to the Andersons' remaining damages, including items such as cost of credit and loss of credit expectancy. Tarter's Report sets forth in detail his extensive experience of over 40 years in bankruptcy, consumer credit, loan servicing, debt collection, credit scoring, and computation of credit damages. App. 8–9 [64]. The Court thus denies Wells Fargo's motion to strike Tarter's expert testimony with respect to the Andersons' remaining damages.

### C. Tarter's Methodology is Sufficiently Reliable

Wells Fargo next asserts that Tarter's opinions fail to satisfy the reliability standard of Federal Rule of Evidence 702. Rule 702 requires that (1) the expert's testimony be based on sufficient facts and data; (2) the expert's testimony be the product of reliable principles and methods; and (3) the expert apply the principles and methods reliably to the facts of the case. *See* FED. R. EVID. 702. Wells Fargo contends that Tarter's methodology amounts to nothing more than making conclusory and pejorative statements about Wells Fargo's business practices without connecting any of his general statements to the facts and issues in this case. But in nonscientific cases such as this one, "the relevant reliability concerns may focus on an expert's personal knowledge or experience." *Kumho*, 526 U.S. at 150. Tarter reviewed thousands of pages of documents in preparation of the Report and has over forty years of experience in the relevant industries. His methodology is thus sufficiently reliable. To the extent Wells Fargo disagrees, it is free to engage in "[v]igorous cross-examination [and] presentation of contrary evidence" as "the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert v. Merrell Dow Pharm.*, 509 U.S. 579, 596 (1993). The Court thus overrules Wells Fargo's objections and denies Wells Fargo's motion to strike Tarter's testimony based on its challenges to his methodology.

### D. Tarter's Opinions on all Topics but the Short Sale of Unrelated Properties are Relevant

Wells Fargo next argues that Tarter's opinions are irrelevant to the Andersons' claims. Wells Fargo asserts that none of the Andersons' pleaded causes of action concern whether

Wells Fargo's actions were commercially reasonable, a topic on which Tarter purports to offer expert testimony. Wells Fargo further argues that none of the Andersons' pleaded causes of action relate to (1) Wells Fargo's corporate governance, (2) Wells Fargo's code of conduct for employees and officers, (3) the role of Wells Fargo's board of directors in risk oversight, (4) Wells Fargo's business culture, (5) the exposure to risks related to mortgage servicing and general servicing practices, or (6) the short sale of unrelated properties and the benefit to those lenders from the short sales, all of which are subjects of Tarter's expert testimony.

The Court agrees that Tarter's testimony regarding the short sale of unrelated properties is irrelevant to the Andersons' claims. But the remainder of Tarter's testimony is relevant to the Andersons' claims because it addresses how Wells Fargo handled the Andersons' Loan payments, reported the Loan to CRAs, and responded to the Andersons' and the CRAs' correspondence regarding the status of the Loan, and how Wells Fargo's actions impacted the Andersons. The Court thus sustains Wells Fargo's relevance objections and strikes Tarter's testimony only with respect to the short sale of unrelated properties.

### E. Tarter May Not Draw Legal Conclusions as Part of His Testimony

Wells Fargo next objects to the portions of Tarter's testimony that contain legal terminology and conclusions. *See, e.g.*, App. 21 [64] (concluding that Wells Fargo "violated [f]ederal and state regulations"); *see also, e.g.*, App. 26, 28 (concluding that Wells Fargo's conduct "constituted 'bad faith'" and Wells Fargo acted in a "grossly negligent manner"). "[A]n expert may never render conclusions of law." *Goodman*, 571 F.3d at 399 (citing *Snap-*

*Drape, Inc. v. Comm'r*, 98 F.3d 194, 198 (5th Cir. 1996)). The Court thus sustains Wells Fargo's objections and grants Wells Fargo's motion to strike Tarter's testimony that contains legal terminology and conclusions.

In summary, the Court declines to strike Tarter's expert witness designation. However, the Court sustains Wells Fargo's objections and strikes Tarter's testimony with respect to: (1) the Andersons' purported medical/psychological damages; (2) the short sale of unrelated properties; and (3) legal terminology and conclusions.

## CONCLUSION

The Court (1) grants in part and denies in part Wells Fargo's summary judgment motion [60]; (2) grants in part and denies in part Wells Fargo's motion to strike [63]; (3) grants Wells Fargo's motion for leave to file an appendix in support of its summary judgment reply [93]; (4) grants the Anderson's motion for leave to file a second amended brief in opposition to Wells Fargo's summary judgment motion [94]; and (5) denies the Anderson's motion for leave to file a surreply [96].

Signed July 13, 2018.

David C. Godbey
United States District Judge